HENDERSON GROCERY Co. v. W. R. JOHNSON *et ux*:

(*Knoxville.*   September   Term,   1918.)

1. **HUSBAND AND WIFE.** Property rights. Modification of husband's
   estate. Statutes.

   The husband's common-law estate *jure uxoris* has been so ma-
   terially modified by legislative enactments that only a bare privi-
   lege is left to the husband to rent out his wife's land and to col·
   lect the rents for the benefit of the family in the capacity of
   governor of the family and not for himself individually. (*Post*,
   *p.* 131.)

   Acts cited and construed:   Acts 1835-36, 1849-50, 1879;   Acts 1913,
   ch. 26.

   Case cited and approved:   Ables v. Ables, 86 Tenn., 333.

   Code cited and construed: Secs. 4225, 4234, 4239.

2. **HUSBAND   AND   WIFE.**   Wife's   separate   property.   Rents.
   Under the Emancipation Act of 1913, a wife has a right to rent out
   her lands and to collect the rents accruing therefrom. (*Post*,
   *p.* 131.)

3. **HUSBAND   AND   WIFE.**   Wife's   separate   property.   Emancipa-
   tion act.

   Under the Emancipation Act of 1913, fully relieving married women
   from all disabilities on account of coverture and giving them the
   same right to acquire, hold, and dispose of realty and personalty
   as if unmarried, a married woman can hold no separate property
   as such, and all her property to which she has title is subject
   to her debts.   (*Post, p.* 131.)

   Cases cited and approved:   Parlow v. Turner, 132 Tenn., 339; Levy
   v. Davis, 125 Tenn., 349.

4. **HUSBAND AND WIFE.** Married women. Wife's title to property.
   Under the Emancipation Act of 1913, a husband had no interest in a

lot owned by the wife at time of her marriage, and the entire title thereto remained in the wife and might be levied upon and sold by her creditor as her property. (*Post, pp.* 131, 132.)

Case cited and approved: Day v. Burgess, 139 Tenn., 559.

FROM WASHINGTON.

Appeal from the Chancery Court of Washington County.—Hon. HAL. H. HAYNES, Chancellor.

GEO. C. SELLS, for appellant.

DIVINE & QUINN, for appellees.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

On January 20, 1915, the complainant, Henderson Grocery Company, recovered a judgment before a justice of the peace against the defendants, W. R. Johnson and wife, Queenie Johnson, for $337.59, upon which judgment execution was issued and levied upon the lot involved in this suit as the property of the defendant Queenie Johnson; and, after being legally condemned, the lot was sold by order of the court and purchased by the complainant. This lot was owned by Mrs. Johnson at the time of her marriage to her co-defendant, W. R. Johnson.

After the time for redeeming said lot had expired, the sheriff executed a deed to complainant to said lot, and, the defendants refusing to surrender possession of same to complainant, the original bill was filed in this cause for the purpose of ejecting the said W. R. Johnson,

Queenie Johnson, and their tenants from said property.

The defendant Queenie Johnson filed her answer as a cross-bill, asking the court to decree that said condemnation proceeding and the sale made thereunder were null and void, and that the complainant acquired no title to said lot by virtue of its purchase thereunder.

The chancellor dismissed the cross-bill, and decreed in favor of complainant on its original bill, and the cross-complainant has appealed from the decree of the chancellor to this court. Among the errors assigned are the following:

(1) "That defendant W. R. Johnson had a freehold interest in the lot involved, by the common law, by statute, *jure mariti,* and *jure uxoris,* not subject to levy and sale for his debts, on execution at law or otherwise, specifically protected by the law from such levy and sale; and protected from dispossession under any process running as arising out of the debts of the husband."

(2) "That the contingent remainder interest of the wife was not an estate subject to levy at law."

(3) "That, as against her creditors, proceeding at law, the rights and interest and estate of the husband was paramount and dominant, as an estate or right of use for life, *in præsenti;* and any sale, if otherwise valid, only passed to the purchaser a servient and contingent right, conditioned upon the husband predeceasing the wife, or the wife predeceasing the husband when childless; and not effective to disturb in the least the tenure of the husband, as tenant by the courtesy initiate or consummate, or his dominant estate as one of present enjoyment."

141 Tenn.—9

(4) "That, upon marriage of W. R. Johnson to Queenie Johnson, the realty she then owned (that now involved) *ipso facto* became split up into two estates as a matter of law, instead of the one; the fee was divided, the present, dominant user or contingent freehold vesting in the husband, the remainder, a contingent remainder, vesting in the wife, or her original fee diminishing to that estate, lesser than the fee."

(5) "That, there being two estates, after marriage, the levy upon both, and sale of both, as appearing from the levy, order, sale, deed, etc., together for a lump sum, was void, for that each debtor had a right to have his interest sold separately, to the end that each could redeem separately."

We will treat these five assignments of error together as they raise the question as to whether the husband of cross-complainant had an interest in the lot of land in question in this suit. The insistence of the cross-complainant is that, under the common law, the husband, by marriage, took a freehold estate in his wife's lands held as a general estate by inheritance during their joint lives, and possibly, by surtesy, during his life; and that the Acts of 1835-36, 1849-50, and 1879, Shannon's Code, sections 4225, 4234, and 4239, respectively, did not take away or deprive him of this common-law interest in his wife's land, but only modified it. Treating this as true, it remains to be determined whether the Emancipation Act of 1913 (Pub. Acts 1913, chapter 26), annulled or took away this right of the husband and left the wife holding the entire estate in her lands.

Originally, under this common-law estate in the wife's lands, the husband could dispose of his interest therein; such interest might be sold by his creditors; he was entitled to rent out the land and to collect and appropriate the rents.   But by various legislative enactments, as held in *Ables* v. *Ables,* 86 Tenn., 333, 9 S. W., 692, the common-law estate *jure uxoris* has been so materially modified that only a bare privilege is left to the husband to rent out his wife's lands and to   collect the rents for the benefit of the family in the capacity of governor of the family, but for the family and not for himself individually.

And in *Parlow* v. *Turner,* 132 Tenn., 339, 178 S. W., 766, it was held that, under and by virtue of the act of 1913, the wife had a right to rent out her lands and to collect the rents accruing from same, thus depriving the husband of the last vestige of his common-law estate, *jure uxoris.*

The act of 1913 is very broad and comprehensive, and provides that married women are fully emancipated from all disability on account of coverture, and that the common law as to the disability of married women and its effect on the rights of the property of the wife is totally abrogated, and that marriage shall not impose any disability or incapacity on a woman as to the ownership, acquisition, or disposition of property of any sort, or as to her capacity to make contracts and do all acts in reference to property which she could lawfully do if she were not married, and that every woman now married, or hereafter to be married, shall have the same capacity to acquire, hold, manage, control, use, enjoy, and

dispose of, all property, real and personal, in possession, and to make any contract in reference to it, and to bind herself personally, and to sue and be sued with all the rights and incidents thereof as if she were not married.

So that, by this act, the *status* of a married woman, with respect to her property, is the same as though she were a *feme sole,* and, as stated in *Levy* v. *Davis,* 125 Tenn., 349, 142 S. W., 1120:

"An unmarried woman, as a matter of course, can hold no separate estate as such. All her property to which she has title is subject to her debts."

So that we are of the opinion that the husband had no interest in this property, but that the entire title to same was vested in the cross-complainant, and, same having been levied on and sold as her property, the purchaser acquired a good title.

The question of curtesy does not arise in this cause, for the reason that the record does not show that a child has been born of this marriage, but, even if there were issue, under the authority of *Day* v. *Burgess,* 139 Tenn., 559, 202 S. W., 911, the husband had no vested interest in this property.

The other assignments of error were disposed of orally.

We find no error in the decree of the Chancellor, and it is affirmed, with costs.