## FLORA CROCKER *v.* THE STATE.*

### (*Nashville.* December Term, 1922.)

1. **INTOXICATING LIQUORS.** Not held as matter of law that evidence that no liquor was on premises preponderates.

   In prosecution for unlawfully keeping whisky intended for sale at retail where the state's evidence was that a police officer saw defendant taking a half pint of whisky out of a rat hole and that he went to this hole and got four half pints, all of which defendant, a married woman, categorically denied, it cannot be said as a matter of law that evidence preponderates in favor of the defendant's contention that there was no whisky on the premises. (*Post, pp.* 107, 108.)

2. **INTOXICATING LIQUORS.** Evidece that married woman knew of presence of whisky on premises insufficient to sustain conviction for possession for sale.

   In a prosecution, under Acts 1917, chapter 3, section 1, of a married woman for unlawfully keeping whisky intended for present sale at retail as a beverage, where there was nothing in the State's evidence which showed that defendant, rather than her husband, owned or stored whisky found by an officer on the premises, or that defendant, and not her husband, was keeping it at their residence for the purpose of present sale, it was insufficient to sustain a verdict of guilty. (*Post, pp.* 108-112.)

Acts cited and construed: Acts 1917, ch. 3; Acts 1913, ch. 26.

Cases cited and approved: Hascall v. Hafford, 108 Tenn., 355; Bryant v. Freeman, 134 Tenn., 169; Ables v. Ables, 86 Tenn., 333; Bryant v. Freeman, 131 Tenn., 87; Henderson Grocery Co. v. Johnson, 141 Tenn., 127; Morton v. State, 141 Tenn., 357; Baker v. State, 248 S. W., 548.

### FROM DAVIDSON.

*On inference of intent to sell intoxicating liquor from possession see note in 39 L. R. A. (N. S.), 534.

Appeal from the Criminal Court of Davidson County.—
HON. JAS. D. DeBOW, Judge.

JOHN W. HILLDROP and NEUMAN BRANDON, JR., for appellant.

WM. H. SWIGGART, JR., Assistant Attorney-General, for
the State.

MR. JUSTICE MALONE delivered the opinion of the Court.

The defendant, a married woman, was indicted for violation of the liquor laws, the indictment containing several
counts.

The State elected to go to trial upon the first count, which
charged the defendant with unlawfully keeping in stock
four pints of white corn whisky, intended for present sale
at retail, as a beverage.

The jury returned a general verdict of "Guilty," and
assessed a fine of $100, and a jail sentence of thirty days.

The defendant has appealed, and claims (a) that the
evidence preponderates against the verdict, and (b) that
there is no evidence to sustain the verdict.

(a) Only two witnesses were introduced, a police officer and the defendant.

The policeman testified that he visited defendant's
"home or place of business" on March 12, 1921; that he
went there on complaint; that he went across the street to
an iron yard there, and watched the house a few minutes,
and saw a man go across the street and up the steps; that
it was after dark; that he followed the man to the head
of the steps; that the man asked her if she had anything,
and she said she did; that she opened the door and went

to a rat hole in the hall, and took a half pint of whisky out; that he threw his flashlight on her, and went to this rat hole and got four half pints out; that defendant is married, and lives there with her husband; that when he flashed his light on her she threw the bottle out of the window.

The defendant denied that she had any whisky concealed about her person; denied that she had any whisky concealed on the premises for sale; denied that she had in her possession, or that there was in the house, any whisky at all; denied that she picked up any bottle from the rat hole. She says that she was then married and living on the premises with her husband, who rents the house; that she had started to get a drink of water when the policeman grabbed her; that she has been arrested on two previous occasions for selling whisky.

It is evident that the statements of these two witnesses are in direct conflict. Neither is corroborated. We cannot say, under these circumstances, that the evidence preponderates in favor of defendant's contention that there was no whisky on the premises.

(b) Under the second assignment, it is argued that there is no evidence to sustain the verdict, because there is no evidence that defendant herself owned the whisky which the officer found, or that she was keeping it in stock for present sale.

It is argued that, the defendant being married and living with her husband, the presumption is that the whisky belonged to him, and that the small quantity found shows it was not being kept for commercial purposes by any one.

The first count of the indictment, as already pointed out, charged the defendant "did have and keep in stock in a certain place, to-wit, 300 Second Avenue South, in the

city of Nashville, Davidson county, Tenn., certain intox-
icating liquors, to-wit, four half pints of white corn whis-
ky, said intoxicating liquors being intended for present
sale at retail as a beverage," etc.

Could the State's evidence, assuming it all to be true,
sustain a conviction under this count?

This count of the indictment is based on chapter 3 of
the Acts of 1917, the first section of which provides:

"That it shall be unlawful for any person, firm or cor-
poration to have or keep in stock, in any warehouse or
place of business or other place within the State of Ten-
nessee, any intoxicating liquors, including wine, ale or
beer, intended for present or future sale as a beverage,
either at wholesale or retail and whether intended to be
sold for delivery at the place of sale or to be shipped or
otherwise transported for delivery at another place."

The gravamen of the offense is not that some person on
the premises may make a sale of intoxicating liquors for
beverage purposes. That offense is covered by other stat-
utes. The offense denounced is keeping liquor stored on
the premises for the purpose of present or future sale.

There is nothing in the State's evidence which shows that
the defendant, rather than her husband, owned or stored
the whiskey, or that she, and not the husband, was keeping
it at their residence for the purpose of present sale.

The leased premises were under the dominion and con-
trol of the husband, not the wife. The husband's domicile
was, of course, that of the wife; and this would be true al-
though she were actually living in another State. *Hascall*
v. *Hafford,* 108 Tenn., 355, 357, 65 S. W., 423, 89 Am. St.
Rep., 952.

But the husband is in law the head of the family. It

has been held, for example, that he does not lose his position as head of the family, within the meaning of the homestead laws, by imprisonment in the penitentiary. *Bryant* v. *Freeman*, 134 Tenn., 169, 173, 174, 183 S. W., 731, Ann. Cas., 1917E, 111. The husband is the governor of the family, and entitled to the management and control of the premises; and this, too, where the land belongs to the wife. *Ables* v. *Ables*, 86 Tenn., 333, 334, 9 S. W., 692; *Bryant* v. *Freeman*, 131 Tenn., 87, 92, 173 S. W., 863, L. R. A. 1915D, 996; *Henderson Grocery Co.* v. *Johnson*, 141 Tenn., 127, 131, 207 S. W., 723.

It is true this court held, in *Morton* v. *State*, 141 Tenn., 357, 209 S. W., 644, 4 A. L. R., 264, that, since the passage of the Married Woman's Emancipation Act (Acts 1913, chapter 26), the doctrine of supposed legal duress does not obtain with regard to crimes committed by the wife in the presence of the husband.

But we do not understand that that case, or any other decision of this court, undertakes to declare that the husband is not the legal head of the family, with the right to control and manage the lands on which husband and wife reside. The family must have one head.

"The husband is by law the managing head of the family except in extreme cases, and the statutes securing to married women their separate property have wrought no change in this general rule. There is a general consensus of opinion that the family existed before the State, and that autocratic family government was the first of all forms of government. It seems to have been regarded as an axiom by publicists for centuries that the family was the basis of the State, and that the destruction of the family would be the destruction of the State. To insure the unity

and preservation of the family, there seemed to be thought necessary a complete identity of interests, and a single head with control and power. The husband was made that head, and given the power, and in return was made responsible for the maintenance and conduct of the wife." · 13 R. C. L., 984.

We do not think that the mere fact that the defendant may have known (and in this case did know) of the presence of the whisky on the premises is sufficient to show a violation of this statute.

In the case of *Morton* v. *State,* supra, the indictment was based on the so-called "Bone Dry Law" (Acts 1917, chapter 12), denouncing transportation of intoxicants from one point to another within the State. The evidence showed that the wife was arrested, riding in an automobile, on the Hopkinsville road, near Goodlettsville; that the automobile was en route from Hopkinsville to Nashville; that in the automobile with Mrs. Morton and her husband were found six or eight sacks, each containing about twenty quarts of whisky. Mrs. Morton did not testify in the case, and, as pointed out by the court, she must have known of the presence of this large quantity of whisky in the car, "and there is nothing to indicate that she was not a participant in the offense of her husband."

But in the present case the State elected to go to trial on the count of the indictment based upon the so-called "Storage Act" (Acts 1917, chapter 3), and we find nothing in that act which makes mere knowledge, in a case like the present punishable. Section 2 thereof provides that—
"Any officer of any corporation consenting to or knowingly permitting the violation of the provisions of this act by any one on behalf of such corporation, shall likewise

be guilty of a misdemeanor and shall, upon conviction, be punished in the same manner."

The language, as will be perceived, is strictly confined to officers of corporations, and does not even include corporate employees.

This is not merely a petty misdemeanor case. Section 2 of the act further provides that:

"A record [second?] or subsequent violation of any of the provisions of this act shall be deemed a felony and the punishment therefor, upon conviction, shall· be imprisonment in the State penitentiary for not less than one year nor more than five years."

It is true that the question of the constitutionality of this and certain other sections of the act was not passed upon in *Baker* v. *State* (Nashville, March 17, 1923), 248 S. W., 548, in which the court held this act constitutional; for the plaintiff in error in that case was not in position to raise these questions.

But, in any event, we are not disposed to extend, by construction, the operation of this drastic law.

It results, therefore, that the case will be reversed and remanded.