Walter Bruce PERRY, Plaintiff-in-Error,

v.

STATE of Tennessee, Defendant-in-Error.

Court of Criminal Appeals of Tennessee.

June 25, 1975.

Certiorari Denied by Supreme Court
Sept. 8, 1975.

Sidney T. Bruce, Memphis, for plaintiff in error.

R. A. Ashley, Jr., Atty. Gen., John R. Lodge, Jr., Asst. Atty. Gen., Nashville, Harvey L. Herrin and John A. Irvine, Asst. Dist. Attys. Gen., Memphis, for defendant in error.

## OPINION

O'BRIEN, Judge.

Defendant was jointly indicted with Larry Franklin Davis, Gerald Martin Keith, and James Tyson Scott, Jr., for possession of marihuana with intent to sell. The jury found defendant guilty and fixed his punishment at not more than five years in the State Penitentiary with a fine of three thousand dollars ($3,000.00). The trial court pronounced sentence of confinement for not less than one year nor more than five years plus the three thousand dollar ($3,000.00) fine. Defendant has appealed this judgment.

For some unaccountable reason, the Bill of Exceptions which we have had to consider was reduced to typewriting by a Notary Public from a re-recording of the official court recording of the proceedings. It has required great patience and endurance to decipher this record. We have found innumerable places where either the questions put by counsel or the answers in response are designated by the word (unintelligible). There are nearly forty episodes in the record with the notation "proceedings inaudible due to failure of electronic equipment". Were it not for the exhaustive examination of witnesses by counsel the task of reviewing this record would be impossible. It is only with great difficulty that we have been able to reach and give proper consideration to the assignments of error.

The first three assignments attack the weight and legal sufficiency of the evidence.

In summary, the evidence was that after obtaining a search warrant, police officers conducted a search of defendant's apartment in which they found approximately sixty-five pounds of marihuana. The greater portion of this substance was found in a common room on the first floor of the dwelling. Some of this quantity was in compressed bricks which the evidence shows is a form used to import or transport marihuana in quantities. Another portion was found loose on a table. It is plain that the material was being re-packaged into smaller lots for distribution. In a second floor bedroom, occupied by defendant, the officers found approximately one pound or one half kilo of marihuana under the bed. At the time of the search, and arrest of defendant, the apartment was jointly occupied by him and a co-defendant, James Tyson Scott. It was stipulated at trial that all the substance found in the apartment was marihuana. Defendant testified and denied any knowledge of how, or when, or by whom, the marihuana was placed in the apartment. His testimony, corroborated by witnesses, was that he had been in the apartment during the noon hour and there was no marihuana in evidence. The officers arrived at approximately 2 p. m. and the discovery of the substance was made as discussed heretofore. James Tyson Scott testified he and another co-defendant, Davis, were entirely responsible for the marihuana. That he had invested two thousand dollars ($2,000.00) with Davis to make the purchase and Davis had procured the substance. A police officer testified that the quantity of marihuana found had an estimated value of about $8,500.00 in bulk and would net a profit of about $3,500.00 if sold in the smaller quantities in which it was being re-packaged.

■ It is earnestly argued by defense counsel that the only proof offered by the

State in this case against the defendant is the evidence that the marihuana seized by the arresting officers was found in the garage apartment occupied by him and by defendant Scott. It is said that defendant did not arrive on the scene until about an hour and a half after the officers had searched the apartment, and in that interval seven other persons including defendant's roommate arrived there. The record before us is not quite clear as to the number of people who came to the apartment while the officers were present. However, it is plain that each of the individuals who came there was placed under arrest. All were subsequently released except the four co-defendants in this case. Of those four, Davis was not arrested until approximately one month before the trial and at the time of trial was in a psychiatric hospital for the criminally insane in Nashville. Keith and this defendant were jointly tried. Keith received a sentence of eighteen months which was later suspended. He did not appeal. Scott, who endeavored to exonerate defendant by his testimony, had earlier entered a guilty plea. He received and served a one year sentence. It is argued there was no evidence of a separate analysis of the material found under defendant's bed, but the record shows a stipulation that all plant material found in the apartment was, in fact, marihuana. It is said that the State's case rests solely on the legal presumption that the marihuana found in defendant's apartment was in his possession, and this presumption was rebutted by competent proof and therefor was no further evidence upon which to base the verdict. Although it is conceded that the courts of this state have upheld the legal presumption allegedly applied in this case, a number of cases are cited on the theory that mere possessory evidence is not enough to convict where rebuttal proof is offered. We have no dispute with the authorities offered on defendant's behalf, but a careful review of these cases convinces us that defendant's reliance on them is misplaced. The one distinguishing feature in each of them other than *Whited v. State,* which can be found at Tenn.Cr.App., 483 S.W.2d 594, is that the defendant in those cases appears to be the only person indicted for the offense charged. In *Whited,* supra, the defendant was found to be an employee of the principal who was indicted with him. This court reversed because the evidence was insufficient to sustain defendant's complicity in the possession and control of the drugs. In the case sub judice, defendant was not indicted to the exclusion of his roommate, or the other two people who the evidence indicated were involved in the joint possession of the contraband. Also, there was other evidence in this case pointing to this defendant's possession. The apartment was rented in his name. A fairly substantial quantity of the substance was found under his bed, which, apparently, was in similar compressed form to that discovered on the lower floor. This was unaccounted for. There were discrepancies in the testimony of the various defendants. The trial judge properly instructed the jury on aiding and abetting, as well as circumstantial evidence. We are of the opinion that there was sufficient evidence to submit the issues to the jury and to warrant the verdict of the jury on that evidence. The assignments going to the preponderance of the evidence are overruled.

It is contended that the punishment meted out by the jury was so great and overwhelming as to indicate bias and prejudice against the defendant.

While it is true the jury imposed the maximum sentence in this case, the judgment of the court was in accordance with the statute and defendant was sentenced to imprisonment for not less than one year nor more than five years which is within the legal limits fixed by law for the conviction offense. We find no legal justification for disturbing the judgment of the trial court, which stands affirmed.

DWYER, J., concurs.

GALBREATH, Judge (dissenting).

I respectfully dissent.

I believe the assignment of error contending the evidence is insufficient to support of the verdict is well-taken. The State's case against plaintiff in error Perry is based solely upon the presumption of control over his apartment where the contraband substance was found. It is true that the evidence established the apartment was rented in Perry's name and that a relatively small portion of the marijuana was found under the bed of Perry. It is also true that in the absence of countervailing evidence this would be sufficient to charge defendant with control and possession of the substance. However, defendant countered this presumption with evidence which showed that his roommate, and not he, had the control and possession of the substance. Supporting this contention is not only the defendant's testimony, but that of the roommate who completely exonerated defendant, and the roommate's banker who substantiated the withdrawal of the money from the roommate's bank account which was for the purpose of purchasing the marijuana.

This situation should be similar to that found in *Morelock v. State,* 187 Tenn. 478, 216 S.W.2d 5, where a conviction for receiving stolen property based solely upon a possession of recently stolen property could not be affirmed where the possession was not shown to be personal, exclusive, and unexplained. Here the presumption was neither personal, exclusive, nor unexplained.

In *Shelton v. State,* 190 Tenn. 518, 230 S.W.2d 986, a conviction for possession of intoxicating liquor was based on a presumption. The Supreme Court there held:

"The presumption that the defendant, as husband and head of the family, is the possessor and owner of any whiskey found on the premises of the marital dwelling, *Crocker v. State,* 148 Tenn. 106, 251 S.W. 914, is a presumption of law merely, and is effective as proof only so long as there is an entire lack of evidence. In the present case, the testimony of the officers that the wife was in possession and exercised dominion over the whiskey by attempting to destroy it, rebuts in its entirety, the presumption of law. *Kelley. v. State,* 184 Tenn. 143, 147, 197 S.W.2d 545. In the face of the positive evidence of the officers, the presumption of law has no probative force to support the conviction."

While it was not officers who supported the evidence offered by the defendant in this case, the officers' testimony did no more than place the marijuana in the apartment jointly occupied by defendant and his roommate. While the jury sees and hears the witnesses and is to be the judge of the credibility of them, where, as here, there is no conflict in testimony to be resolved, the jury is not privileged to disregard the evidence offered by defendant and his witnesses, for every witness is presumed to tell the truth.

"As to presumptions, it is settled law that while they may be indulged in criminal cases, this cannot be done to deprive the defendant of the presumption of innocence as was done in this case.

"In *Marie v. State,* 204 Tenn. 197, 319 S.W.2d 86, presumptions are discussed, and it is said that a presumption is a substitute for evidence which, in the absence of direct evidence conflicting, requires as a matter of law that a certain fact conclusion be accepted or proved by the jury. In this case, Underhill's Criminal Evidence, 5th Ed., is quoted with approval as saying:

'So, though the decisions are not harmonious, the better and more reasonable view is that the law will not countenance any presumption, which by overcoming the presumption of innocence will cast the burden of proving his innocence upon the defendant.' Section 43, p. 66.

"In the case of *Persons v. State,* 90 Tenn. 291, 16 S.W. 726, this Court said:

'It is contended the rules of evidence are the same in civil and criminal cases. Such is the general rule, but it does not follow, that because the rule is the same, that presumptions applicable in one are always applicable in the other, for an antagonistic presumption may exist, and does, in criminal cases; that is, the innocence of the defendant. That presumption of innocence does not allow the presumption of any fact against it.' 90 Tenn. 295, 16 S.W. 727.

"This case was decided in 1891, but it is still the law in Tennessee today." *Liming v. State,* 220 Tenn. 371, 417 S.W.2d 769.