**STATE of Tennessee, Appellee,**

**v.**

**Mark Allen BUSH, alias,**
**Defendant/Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Jan. 13, 1988.

W.J. Michael Cody, Atty. Gen., Gordon W. Smith, Asst. Atty. Gen., Robert L. Jolley, Jr., Asst. Dist. Atty. Gen., for appellee.

Thomas N. DePersio, Oak Ridge, for defendant/appellant.

OPINION

BIRCH, Judge.

In order to fulfill his self-described need for attention, Mark Bush, the defendant, set fire to two occupied motel buildings, one occupied apartment building, one garage belonging to an apartment building, and one motor vehicle (and attempted to set fire to another), causing damage in excess of one million dollars, all within a period of approximately one month.

This conduct resulted in defendant's being indicted for eight separate arson offenses and a misdemeanor check charge.

He pleaded guilty to each charge, and the trial judge fixed his punishment in the first aggravated arson case at 25 years, and at 20 years each in four additional cases of aggravated arson. On two arson cases he received 12 years and 5 years respectively. The sentence in the attempted arson case was fixed at eleven months twenty-nine days. All sentences were Range I. All sentences were ordered concurrent, except one of the 20-year sentences, creating a cumulative effective sentence of 45 years. The defendant is aggrieved by the sentence and appeals that sole issue as of right. We conclude that the sentence fits the crime(s).

■ Our review of this issue is *de novo*, without a presumption that the findings and judgment of the trial court are correct.

Tenn.Code Ann. § 40–35–402(d). *See also,* *State v. Moss,* 727 S.W.2d 229 (Tenn.1986). Our consideration also includes all factors enumerated in Tenn.Code Ann. § 40–35–210(b)[1].

■ The record in this case reveals a 22–year-old male who claims to have had a turbulent childhood, having been bounced around from one foster home to another until he was adopted in 1971 by the Reverend and Mrs. Bush, who have been parents to him since then. His adolescence and later teenage years were rather average, except that he began to steal from many of the persons who had befriended him. This larcenous inclination has continued to the present. Despite this, the defendant managed to graduate from high school.

Defendant's employment history points up two common significant factors—1) each job was of short duration and 2) each job was ended because of suspicions of theft or some other problem. The longest period of employment was at the Fort Sanders facility. Even so, defendant was terminated there for misconduct.

Defendant is articulate but the explanations of his predicaments are inadequate and arrived at too easily. As an example, the only reasons he offers for having hazarded close to 500 persons of varied ages and physical conditions to the perils fire creates are, "I was needing attention, I needed someone to talk to."

His conduct in setting these fires appears determined, having set fire to each of two buildings twice.

In addition to the incidences of stealing from employers and others, the defendant has been involved in minor traffic violations, and has been suspected of other larceny-type offenses. The only conviction worth our attention is one for driving under the influence in June 1985, which resulted in a $250 fine, 10 days in jail, and an 11 month 19 day period of probation, which remained incomplete at the time of the present offense. Also, there is a check law violation pending.

Although he admits the heavy use of alcohol, defendant does not consider himself to be an alcoholic.

Kenneth R. Carpenter, M.D., a psychiatrist, describes the defendant as having a sociopathic personality, being quite manipulative, and having a very shallow sense of caring for others.

In mitigation, obviously the lack of substantial judgment because of age is a factor[2].

Less obvious is the defendant's claim that he did not contemplate that his criminal conduct would cause or threaten serious bodily injury[3]. It is hard to imagine that one who ignites an occupied building would fail to contemplate the potential for serious bodily injury. Nevertheless, Dr. Carpenter's opinion provides a basis for finding this as a mitigating factor, and we have considered it in mitigation, despite our reservations about its application in this case.

The enhancement factors are distinct and abundant:

(1) The defendant has a previous history of criminal convictions or criminal behavior[4];

(2) The personal injuries inflicted upon or the amount of damage to property sus-

---

1. Tenn.Code Ann. § 40–35–210(b), provides:
   To determine the specific sentence and the appropriate combination of sentencing alternatives that shall be imposed on the defendant, the court shall consider the following:
   (1) The evidence, if any, received at the trial and the sentencing hearing;
   (2) The pre-sentence report;
   (3) The principles of sentencing and arguments as to sentencing alternatives;
   (4) The nature and characteristics of the criminal conduct involved;
   (5) Evidence and information offered by the parties on the mitigating and enhancement factors in §§ 40–35–110 and 40–35–111; and
   (6) Any statement the defendant wishes to make in his own behalf about sentencing.

2. Tenn.Code Ann. § 40–35–110(7), provides: "The defendant, because of his youth or old age, lacked substantial judgment in committing the offense."

3. Tenn.Code Ann. § 40–35–110(2).

4. Tenn.Code Ann. § 40–35–111(1).

tained by or taken from the victim was particularly great[5];

(3) The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community[6]; and

(4) The defendant had no hesitation about committing a crime when the risk to human life was high[7].

A Range I sentence for aggravated arson is from 10 to 35 years. For the arson offenses, a Range I punishment for setting fire to property[8] (the motor vehicle) is 1 to 5 years; a Range I punishment for setting fire to building or structure[9] (the garage) is 3 to 12 years. Without considering the misdemeanor offenses, the defendant was exposed as a Range I offender, upon consecutive sentencing, to a total minimum sentence of 54 years, and a total maximum sentence of 192 years. The Range I sentences of 25 years and of 20 years for aggravated arson are, therefore, well within statutory limits.

In finding the defendant to be a dangerous offender under the *Gray v. State,* 538 S.W.2d 391 (Tenn.1976), standards, the trial judge stated:

> He is responsible—that is right. He is responsible for the consequences of his actions. He sobered up in between. But, yet, he continued on this course of conduct involving five aggravated arsons, involving motels, and apartments buildings, where children, and women were. And all these fires were set, as I recall, at a time when they would, for the most part, be in bed, and helpless. It is only by the grace of God, that a number of people were not killed, or injured in this. And that is the only reason that I am not going to give him the maximum, for that reason. That because no one was injured or killed.... And the danger to human life was extremely high. Crimes committed in multiple dwellings, setting them on fire at an hour when people were asleep. The money loss is extensive, over a million dollars, a million dollars for just one place. In my mind, he shows no remorse whatsoever. The only thing he said, he said he was glad no one got hurt. He didn't say that he was sorry that he did it. He didn't say that he was sorry for the people that suffered a loss, that were inconvenienced. He didn't say he was sorry for the man that was depressed because his van was destroyed, or the man that owned the Family Inn, how depressed he must have been, for being practically put out of business by a million dollar fire, or the other place that had that extensive fire. In my opinion, this Defendant is extremely dangerous to the public. He has no hesitation whatsoever in committing crimes that show a disregard, or the danger to human life. I cannot accept the fact that he did not contemplate that people's lives would be endangered.

Because of this finding the trial judge ordered one of the aggravated arson sentences of 20 years to be served consecutively.

We find that the record fully supports the trial judge's finding that the defendant is a dangerous offender. Consecutive sentencing is therefore appropriate.

We therefore conclude that the substantial number and nature of the enhancement factors, when evaluated with the mitigating factors (one of which is found only with great difficulty), fully supports the effective sentence of 45 years imposed by the trial judge.

Finding no reversible error in this issue, we affirm the judgment of the trial court and adopt the 45 year sentence.

DAUGHTREY and BYERS, JJ., concur.

5. Tenn.Code Ann. § 40–35–111(6).

6. Tenn.Code Ann. § 40–35–111(8).

7. Tenn.Code Ann. § 40–35–111(10).

8. Tenn.Code Ann. § 39–3–203.

9. Tenn.Code Ann. § 39–3–202.