# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### September 11, 2001 Session

## STATE OF TENNESSEE v. DARRELL S. MILLER

**Appeal as of Right from the Circuit Court for Benton County**
**No. 99-CR-858     Julian P. Guinn, Judge**

---

### No. W2000-01306-CCA-R3-CD  - Filed February 14, 2002

---

The appellant, Darrell S. Miller, was convicted by a jury in the Benton County Circuit Court of two counts of possessing controlled substances with intent to manufacture, sell, or deliver, and one count of possession of drug paraphernalia.  The trial court sentenced the appellant to a total effective sentence of eight years incarceration in the Tennessee Department of Correction, suspending all but one year and placing the appellant in a community corrections program for the remainder.  On appeal, the appellant raises the following issues for our review: (1) whether the trial court properly admitted drug exhibits; (2) whether the trial court erred in permitting the testimony of Stacy Mumper regarding a prior transaction between the appellant and Mumper's companion; (3) whether the evidence was sufficient to sustain his convictions; (4) whether the trial court approved the verdict as thirteenth juror; and (5) whether the trial court erred in failing to grant a new trial when the appellant produced sworn affidavits that Brenda Wynn perjured herself on the witness stand.  Upon review of the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Victoria L. DiBonaventura, Paris, Tennessee, and Steven L. West, McKenzie, Tennessee, for the appellant, Darrell S. Miller.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Robert "Gus" Radford, District Attorney General; and Beth Boswell and Jerry Wallace, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

### I.  Factual Background

On February 4, 1999, Officer James Franklin Stockdale, Sr., and other members of the Benton County Sheriff's Department executed a search warrant on 455 Alpine Road in Benton

County, the residence of Brenda Lou Wynn.[1] Officer Stockdale explained at trial that, prior to the issuance of the warrant, he had Wynn's mobile home under surveillance for two and a half to three months. During that time, he observed the residence two to three times a week, and he always saw the appellant's car at the residence. He testified that, during the search, he discovered the appellant's bedroom in the mobile home, which room contained his clothes and various forms of identification, including his current driver's license. Additionally, the police found several "baggies" of white powder located in a large shed behind the residence. The search also uncovered the makings of a laboratory for the manufacture of methamphetamine, rolling papers, straws, and a small knife. Sandra Jean Romanek, a forensic scientist with the Tennessee Bureau of Investigation (TBI), testified that 6.4 grams of the substance discovered was methamphetamine and 19.4 grams of the white powder was cocaine.

Wynn testified that the appellant had been living with her, in his own separate bedroom, in her mobile home since April 1998. Wynn asserted that the shed was rarely locked and was accessible to anyone. Additionally, Wynn maintained that she had earlier found the cocaine, that was later discovered by the police, behind the spices in a kitchen cabinet above her stove. She contended that the cocaine did not belong to her and that it must belong to the appellant as he was the only other person living with her at the time the search warrant was executed. Wynn also noted that at one time the appellant lived in the shed for approximately two or three months.

The appellant presented witnesses who challenged Wynn's credibility and who asserted that the appellant had moved from the residence prior to February 4, 1999. In rebuttal, the State called Stacey Leyane Mumper who related that, within five days of the execution of the search warrant, she had accompanied a companion to Wynn's residence. The appellant and her companion completed a transaction at the residence.

A jury in the Benton County Circuit Court convicted the appellant on count one of possession of more than .5 gram of cocaine with intent to manufacture, deliver, or sell; on count two of possession of methamphetamine with intent to manufacture, deliver, or sell; and on count three of possessing drug paraphernalia. Pursuant to a sentencing hearing, the trial court imposed concurrent sentences of eight years incarceration in the Tennessee Department of Correction for the cocaine conviction, three years incarceration for the methamphetamine conviction, and eleven months and twenty-nine days for the drug paraphernalia conviction. The trial court further ordered that the appellant serve one year of his sentence in confinement with the balance to be served in community corrections. The appellant now appeals.

## II. Analysis
### A. Drug Exhibits
We will begin by addressing the appellant's concerns regarding the admission of the cocaine and methamphetamine into evidence. The appellant argues that the drug exhibits were marked for the purpose of identification only and were never moved into evidence; accordingly, the

---

[1] Wynn is also referred to in the record as Brenda Hollingsworth.

appellant moved for a judgment of acquittal at the close of proof, which motion was overruled. Additionally, the appellant contends that the State's witnesses did not testify regarding the chain of custody for the drug exhibits. The appellant also summarily states that "[t]he jury was permitted to take the exhibits into the deliberation room and to consider them in determining its verdict."

The following colloquy contains the main reference in the record concerning the admission of the drug exhibits into evidence:

> State: Judge, I'd like to go ahead and offer into evidence, at this time, [the drug exhibits].
>
> Trial Court: Alright, [the drug exhibits have] already been pre-marked. They'll be entered for identification purposes.

We observe that, if the exhibits had actually been marked only for identification purposes, the exhibits should not have been taken into the jury room during deliberations. See Tenn. R. Crim. P. 30.1. However, from the foregoing comments, and from various references to the drug exhibits throughout the record, including references by the appellant's counsel, it is unclear whether the trial court intended to or in fact did enter the drug exhibits into evidence for all purposes. Moreover, contrary to the appellant's contention, there is no proof in the record to indicate that the jury actually took the drug exhibits into the jury room to aid in their deliberations. Furthermore, we note that, because he entered no objection to the entry of the exhibits at the time the State moved to admit the evidence, the appellant has waived this issue. Tenn. R. Evid. 103(a)(1); see also State v. Baldwin, 867 S.W.2d 358, 361 (Tenn. Crim. App. 1993); State v. Richard Allen Kidd, II, No. 03C01-9607-CC-00272, 1997 Tenn. Crim. App. LEXIS 1331, at **10-11 (Knoxville, December 23, 1997) (stating that "objection to introduction of evidence is waived absent a contemporaneous objection to its admission").

Nevertheless, we will address the appellant's challenge to the chain of custody of the drug exhibits. This court has previously noted:

> In order to admit physical evidence the party offering the evidence must either introduce a witness who is able to identity the evidence or must establish an unbroken chain of custody. Whether the required chain of custody has been sufficiently established to justify the admission of evidence is a matter committed to the sound discretion of the trial court, and the court's determination will not be overturned in the absence of a clearly mistaken exercise of that discretion. The identity of tangible evidence need not be proven beyond all possibility of doubt, and all possibility of tampering need not be excluded. The circumstances must establish a reasonable assurance of the identity of evidence.

State v. Holloman, 835 S.W.2d 42, 46 (Tenn. Crim. App. 1992) (citations omitted); see also Baldwin, 867 S.W.2d at 361.

In the instant case, Officer Stockdale testified that he personally sent the evidence to the TBI laboratory. Romanek, the scientist who tested the materials, testified that she received the materials in a sealed condition and resealed the packaging after testing the substances. See State v.

Betty A. Bomar, No. 3, 1986 Tenn. Crim. App. LEXIS 2780, at **3-4 (Jackson, September 17, 1986). Romanek further testified that 6.4 grams of the materials were methamphetamine and 19.4 grams of the materials were cocaine. Based upon this testimony, we find that the trial court did not abuse his discretion in marking the drug exhibits or in allowing testimony regarding the exhibits. See State v. Scott Anthony Norman, No. 01C01-9109-CC-00271, 1992 Tenn. Crim. App. LEXIS 340, at **4-5 (Nashville, April 16, 1992); State v. Alonzo Crawford, No. 02C01-9106-CR-00133, 1992 Tenn. Crim. App. LEXIS 66, at **3-4 (Jackson, January 29, 1992).

### B. Prior Transaction

The appellant also argues that the trial court erred in allowing the testimony of Stacey Mumper regarding a prior transaction between the appellant and a companion of Mumper's, which transaction occurred at 455 Alpine Road.[2] Prior to Mumper's testimony, the trial court stated for the record:

> Alright, as to [Mumper], who purports to testify that she had entered into a drug transaction with the defendant on the premises where this search was conducted, that occurred about three days prior to the search.
>
> The defendant objected and the court felt that the fact that there was a drug sale, if indeed one had occurred, was inadmissible, upon the grounds that it was an attempt to prove the present crime by the prior bad act or prior crime. And that it was, even if true, unduly prejudicial.
>
> That the State could, however, if they wish, produce this witness, and to show in rebuttal that she had met and seen the defendant there, that there was transaction or sale of some sort. In other words, what did occur, with the exception of the transfer or the delivery of controlled substances.

The trial court noted that both the State and the appellant objected to this ruling, and the prosecution and defense agreed that the trial court had clearly stated their positions.

The State proceeded to call Mumper to the stand, and she testified that, within five days of the execution of the search warrant on February 4, 1999, she and a companion met with the appellant at the mobile home at 455 Alpine Road. Mumper explained that her companion gave the appellant some money and they left the residence with "something." Mumper contended that she would be in danger if she named her companion.

The appellant argues that the testimony of Mumper related to a "prior bad act" of the appellant, and, therefore, the trial court did not comply with the procedure required by Tenn. R. Evid. 404(b) for the admission of prior bad act testimony. We note that it is within the sound

---

[2] The witness is also referred to as "Stacey Hillard."

discretion of the trial court to determine the admissibility of evidence. <u>State v. Blevins</u>, 968 S.W.2d 888, 892 (Tenn. Crim. App. 1997).

> Tenn. R. Evid. 404 provides:
> (b) Other Crimes, Wrongs, or Acts.–Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:
>
> (1) The court upon request must hold a hearing outside the jury's presence;
>
> (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and
>
> (3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

<u>See also</u> <u>State v. Parton</u>, 694 S.W.2d 299, 302 (Tenn. 1985). Additionally, we note that, "[w]hen a trial court substantially complies with the procedural requirements of [Tenn. R. Evid. 404(b)], its determination will not be overturned absent an abuse of discretion." <u>State v. Bruce Monroe Stevenson</u>, No. 03C01-9810-CR-00372, 2000 Tenn. Crim. App. LEXIS 61, at \*\*14-15 (Knoxville, January 27, 2000). In order to permit the admission of the evidence, the court must find by clear and convincing evidence that the appellant committed the prior crime. <u>Id.</u> Generally, "[o]nly in an exceptional case will another crime, wrong, or bad act be relevant to an issue other than the accused's character. Such exceptional cases include identity, intent, motive, opportunity, or rebuttal of mistake or accident." <u>State v. Luellen</u>, 867 S.W.2d 736, 740 (Tenn. Crim. App. 1992). In making its decision regarding the admissibility of the testimony, the trial court must first determine if the offered testimony is relevant to prove something other than the appellant's character. If the evidence is relevant, then, upon request, the court will proceed to a Rule 404(b) hearing.

At oral argument, the appellant's counsel asserted that the trial court did not conduct a Tenn. R. Evid. 404(b) hearing. However, it appears from statements of the trial court contained in the transcript, *supra*, that some form of jury-out hearing was held on the issue of Mumper's testimony. Moreover, the record does not reflect that the appellant objected to the nature of the proceeding. Regrettably, the contents of that hearing are not contained in the record. Regardless of the lack of a specific request to place "on the record the material issue, the ruling, and the reasons for admitting the evidence," Tenn. R. Evid. 404(b)(2), the trial court stated that, while evidence of a drug sale was unduly prejudicial, the State would be allowed to establish that the appellant was at

the residence near the time when the search warrant was executed.[3] Upon reviewing the testimony, we disagree with the trial court's ruling that the prejudice resulting from Mumper's proposed testimony outweighed the probative value of the evidence. During trial, the appellant's continued residency at the address was a contested issue. See State v. Charles A. Crenshaw, No. 01C01-9802-CR-00073, 1999 Tenn. Crim. App. LEXIS 206, at *6 (Nashville, March 9, 1999); State v. Johnny Wayne Tillery, No. 01C01-9506-CC-00182, 1998 Tenn. Crim. App. LEXIS 421, at **25-26 (Nashville, March 30, 1998). Additionally, Mumper's testimony regarding the appellant's presence demonstrated the appellant's ability and opportunity to exercise dominion and control over the contraband, an issue that was also disputed. This issue is without merit.

### C. Sufficiency of the Evidence

Next, we turn to the sufficiency of the evidence underlying the appellant's convictions. In examining a challenge to evidentiary sufficiency, we note that a jury conviction essentially removes the presumption of the appellant's innocence and replaces it with a presumption of guilt. State v. Suttles, 30 S.W.3d 252, 260 (Tenn.), cert. denied, 531 U.S. 967, 121 S. Ct. 401 (2000). Accordingly, the appellant bears the burden of demonstrating to this court why the evidence will not support the jury's findings. Id. To satisfy this burden, the appellant must establish that no reasonable trier of fact could have found the essential elements of the offense in question beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e). Moreover, on appeal, as the prevailing party in the trial court, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom. State v. Cottrell, 868 S.W.2d 673, 675 (Tenn. Crim. App. 1992). Regardless, "[t]he weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact." State v. Manning, 909 S.W.2d 11, 13 (Tenn. Crim. App. 1995).

A guilty verdict can be based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). Moreover, while a guilty verdict may result from purely circumstantial evidence, in order to sustain the conviction the facts and circumstances of the offense "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the [appellant]." State v. Crawford, 470 S.W.2d 610, 612 (Tenn. 1971).

In order to sustain the appellant's conviction on count one, the State needed to prove that the appellant knowingly possessed cocaine "with intent to manufacture, deliver or sell such [cocaine]." Tenn. Code Ann. § 39-17-417(a)(4) (2001 Supp.). To sustain the appellant's conviction on count two, the State was required to establish the appellant's knowing possession of

---

[3] Although the trial court expressed its intent to limit Mumper's testimony to the appellant's presence at the mobile home, the actual testimony differed little from that originally proposed by the State. Specifically, the only information Mumper left out of her testimony was the fact that the item purchased by her companion from the appellant was cocaine. However, during her testimony at trial, Mumper conceded that she had recently pled guilty to possession of cocaine shortly after the "transaction" with the appellant took place. Additionally, she asserted that it would endanger her to reveal the identity of her companion.

methamphetamine with the intent to manufacture, deliver, or sell. Id. "[A] person . . . acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." Tenn. Code Ann. § 39-11-302(b) (1997). Furthermore, Tenn. Code Ann. § 39-11-301(a)(2) (1997) provides that "[w]hen acting knowingly suffices to establish an element, that element is also established if a person acts intentionally."

Initially, we observe that drug possession can be either actual or constructive. State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). Constructive possession is "'the power and intention at a given time to exercise dominion and control over . . . [the drugs] either directly or through others.'" State v. Brown, 823 S.W.2d 576, 579 (Tenn. Crim. App. 1991) (alteration in original). However, the presence of the accused in the area where drugs are found is not enough, standing alone, to sustain a conviction for drug possession. Id.

At trial, the State presented the testimony of Wynn who related that the appellant and she were the only people who permanently resided at the residence. Furthermore, she contended that the appellant lived at the residence at the time the police executed the search warrant. Wynn maintained that, for two or three months in the year prior to the arrest, the appellant had lived in the shed where the drugs were discovered. Additionally, Wynn attested that the appellant had unlimited access to the same areas of the property as she and that he had such access since the day he moved in with her. See Brown, 823 S.W.2d at 579-580; State v. Demario Hill, No. 01C01-9707-CC-00444, 1998 Tenn. Crim. App. LEXIS 1022, at *11 (Nashville, September 30, 1998). She averred that the methamphetamine was hers, but that she had obtained the drug from the appellant. Wynn asserted that she did not know how to manufacture methamphetamine. Additionally, Wynn testified that she found the cocaine behind the spices in her kitchen cabinet. Wynn maintained that the cocaine must belong to the appellant because it was not hers and was found inside her house. She took the cocaine to the shed and "put it . . . in [the appellant's] box."

We note that an accused should not be convicted solely on the uncorroborated testimony of an accomplice, without evidence of some fact entirely independent of the accomplice's testimony suggesting the accused's guilt of the crime. State v. Copeland, 677 S.W.2d 471, 474 (Tenn. Crim. App. 1984). However,

> the corroborative evidence may be direct or circumstantial. It need not be, of itself, sufficient to support a conviction. Slight circumstances may suffice. If the corroborating evidence fairly and legitimately tends to connect the accused with the commission of the crime charged it satisfies the requirement of the rule on corroboration of an accomplice's testimony.

Id. at 475. In the instant case, Wynn's testimony was sufficiently corroborated by the testimony of Officer Stockdale, who testified that, during his two and a half month or three month surveillance of the residence, the appellant's car was always present, indicating that the appellant lived there. Additionally, Officer Stockdale explained that, during the search, he discovered the appellant's clothing and current driver's license in a bedroom in the residence. See State v. Maurice Pierre Teague, No. 02C01-9806-CC-00187, 1999 Tenn. Crim. App. LEXIS 174, at **10-11 (Jackson,

February 26, 1999); State v. Lorene E. Weakley, No. 01C01-9605-CC-00216, 1997 Tenn. Crim. App. LEXIS 766, at **6-7 (Nashville, August 15, 1997). Moreover, Mumper testified that the appellant was at the residence within five days of the execution of the search warrant. Furthermore, Officer Stockdale related that, during the search in the shed, he discovered "a wooden box that was inside of a black and red box, where they split it back about 'that far,' and that's where the cocaine and [methamphetamine] both was found out in it." See Perry v. State, 527 S.W.2d 749, 751 (Tenn. Crim. App. 1975). Exhibit 9, a picture of the substances found by police in "the [appellant's] box" located in the shed, clearly shows several individual "baggies" of white powder. Officer Stockdale testified that these substances were sent to the TBI laboratory, and Romanek indicated that the baggies contained 19.4 grams of cocaine and 6.4 grams of methamphetamine. We conclude that this evidence is sufficient for a jury to find beyond a reasonable doubt that the appellant possessed cocaine with the intent to manufacture, deliver, or sell as alleged in count one and that the appellant possessed methamphetamine with the intent to manufacture, deliver, or sell as alleged in count two.

On count three, the appellant was convicted of possessing drug paraphernalia. Tenn. Code Ann. § 39-17-425(a)(1) (1997) provides:

> it is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this part.

Again, we note that possession can be actual or constructive. Cooper, 736 S.W.2d at 129.

Officer Stockdale testified that, during his search, he discovered several materials used in the manufacture of methamphetamine. Additionally, Officer Stockdale indicated that he discovered straws, rolling papers, and a small knife in the same box where the drugs were located. He further explained that "[m]ost of the time, rolling papers are used to smoke marijuana with," "the straws are normally used to snort a line of cocaine up through the nostril, or a line of [methamphetamine], either one," and the knife is "sometimes [used] to cut the [methamphetamine] with, or cocaine." See Tenn. Code Ann. § 39-17-424(8) (1997). Coupled with the appellant's aforementioned connection with the residence, shed, and box where the items were located, we conclude that a reasonable juror could have found the appellant guilty of possession of drug paraphernalia. See Hill, No. 01C01-9707-CC-00444, 1998 Tenn. Crim. App. LEXIS 1022, at *12.

### D. Thirteenth Juror

The appellant argues that

> [a]t the sentencing hearing of this cause the trial judge commented at length concerning witnesses having lied in this case. In addition, the Court recalled at the Hearing on the Motion for a New Trial the unusual amount of lying having occurred at trial. Given the statements made by the Court concerning the witnesses not having testified truthfully, it is unclear how the court could, acting as

thirteenth juror, approve the verdict of the jury. . . . [I]t is difficult to see the trial court's approval of the jury verdict standing.

When the trial court performs the duties of a thirteenth juror, it addresses the concern of whether the verdict is supported by the weight of the evidence presented at trial. State v. Moats, 906 S.W.2d 431, 433-435 (Tenn. 1995). Tenn. R. Crim. P. 33(f) provides that "the trial court may grant a new trial following a verdict of guilty if it disagrees with the jury about the weight of the evidence." If a trial court simply overrules a motion for new trial without comment, this court may infer that the trial judge has acted as thirteenth juror in approving the jury's verdict. State v. Carter, 896 S.W.2d 119, 122 (Tenn. 1995). However, if the record reflects that the trial court was dissatisfied with or disagreed with the jury's verdict or the weight of the evidence, the appropriate remedy is for this court to grant a new trial. Moats, 906 S.W.2d at 434-436.

At the sentencing hearing, the trial court specifically commented:
The thing that stands out most in this Court's mind is the utter lying that it heard in this case, all of which is traced right back to this man. . . . Not only does [this case] have untruthfulness in it, every lie that was told was so patently obvious and so easily traceable right back to you, Mr. Miller. You had to give them the things to say. They couldn't have said what they did say unless you had set them up that way. The truth is not in you.
Moreover, at the motion for new trial, the court explained that
I reached the point, during the trial of this, where [the lying] became so apparent that it was counterproductive in the defendant's behalf. The witnesses that he produced to testify for him were so ready, willing, and able to lie, that the jury could detect the lie in witness to witness. It was just utterly extraordinary.

Thus, it is clear that the trial court did not question the weight of the evidence against the appellant. Instead, the trial court proclaimed that the defense witnesses had lied, not the witnesses for the State. The trial court's comments do not indicate that the court was dissatisfied with the jury's verdict or that the trial court failed to act as thirteenth juror. This issue is totally without merit.

### E. Motion for New Trial
The appellant argues that the trial court should have granted his motion for new trial based upon two affidavits that asserted that Wynn lied in her testimony. This court has previously observed that the decision to "grant[] or den[y] a new trial on the basis of newly discovered evidence rests within the sound discretion of the trial judge." State v. Caldwell, 977 S.W.2d 110, 117 (Tenn. Crim. App. 1997). Accordingly, we will not overturn the trial court's decision absent an abuse of discretion. See State v. Meade, 942 S.W.2d 561, 565 (Tenn. Crim. App. 1996).

It is the law of this state that

a trial court should grant a defendant a new trial on the basis of newly discovered evidence when [(1)] the defendant has been reasonably diligent in obtaining evidence, [(2)] the materiality of the new evidence is apparent, and [(3)] the evidence is likely to change the result [of the trial]. It is true that newly discovered impeachment evidence will not constitute grounds for a new trial, as a general rule. But if the impeaching evidence is so crucial to the defendant's guilt or innocence that its admission will probably result in an acquittal, a new trial may be ordered.

State v. Singleton, 853 S.W.2d 490, 496 (Tenn. 1993) (citations omitted); see also State v. Arnold, 719 S.W.2d 543, 550 (Tenn. Crim. App. 1986) (observing that a new trial will not be granted on the basis of newly discovered evidence when such evidence will serve only to impeach a witness); State v. LeQuire, 634 S.W.2d 608, 615 (Tenn. Crim. App. 1981) ("Where evidence tends only to contradict or impeach the trial evidence, a new trial based on such alleged newly discovered evidence is not warranted."). All three prongs of the test must be met before an appellant is entitled to a new trial based on newly discovered evidence. See State v. Nichols, 877 S.W.2d 722, 737 (Tenn. 1994).

The appellant presented affidavits from two individuals who claimed that they were sitting outside the courtroom on the day of the appellant's trial. They assert that following her testimony, Wynn expressed regrets regarding her testimony, stating that she was forced to lie about the appellant because she was afraid that she would be charged. Initially we note that, at trial, the defense presented witnesses who accused Wynn of lying on the stand. Additionally, at trial, Wynn maintained that, although she did not desire to testify against the appellant, she was nonetheless telling the truth. The issue of Wynn's credibility was obviously before the jury. The jury's verdict implicitly credits Wynn's testimony and discredits the testimony of defense witnesses, an action which is wholly within the purview of the jury. See Manning, 909 S.W.2d at 13. Furthermore, one of the affidavits fails to specify at what point Wynn lied, prior to or during trial. If it was prior to trial, such evidence was merely cumulative of the evidence produced at trial. See State v. Joe B. McCoy, No. 87-97-III, 1988 Tenn. Crim. App. LEXIS 36, at *3 (Nashville, January 20, 1988). The other affidavit asserted that Wynn lied during her testimony. However, during her testimony at trial, Wynn repeatedly proclaimed the truthfulness of her testimony. See State v. Russell Allen, No. M2000-01656-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 508, at **9-10, (Nashville, July 10, 2001). Accordingly, it is highly doubtful that this evidence would have changed the result of the trial. We conclude that the trial court did not err in failing to grant the appellant a new trial based upon this evidence.

### III. Conclusion

Finding no reversible error, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE