# PERSONS *v.* STATE.

## (*Jackson.*   May 30, 1891.)

1. MURDER.   *Presumption as to suicide.   Erroneous charge.*

In murder case where death by violence is not questioned, but two theories—the homicidal and the suicidal—advanced as to the manner of the killing, neither supported by any positive evidence, and both, to some extent, by circumstances, it is error for the Court to charge that there is any presumption against death by suicide. This charge deprives the defendant of the benefit of reasonable doubt, leaving the jury to infer his guilt if the evidence merely preponderated against suicide or was in equipoise.

Case cited and distinguished: Insurance Co. *v.* Bennett, *ante, p. 256.*

2. SAME.   *Same.   Correct charge.*

The Court should have charged, in such case, that defendant must be acquitted, if, upon the entire evidence, it was not clear beyond reasonable doubt that deceased's death was homicidal and not suicidal.

3. SAME.   *Expert testimony.   Erroneous charge.*

It is proper for the Court, by general instructions, to caution the jury and instruct them as to the weight to be given expert testimony, but, in a murder case, where experts have been examined by each party in support of his own theory—those testifying on behalf of defendant admitting their employment by him to make *post-mortem* examination of deceased and to investigate other facts, and their expectation of compensation beyond mere witness fees—it is error for the Court to charge, in effect, that while experts like those introduced by defendant were competent witnesses, they were entitled to little, if any, credit. The Court may not determine as to credibility of particular witnesses.

4. SAME.   *Same.   Same.*

And it is error, in such case—one of the experts examined by the State having made *post-mortem* examination under order of the Court—for

the Court to charge, by way of contrasting the experts of the respective parties, that "on the other hand, when experts are appointed by the State, ✳ ✳ ✳ then the testimony is entitled to great weight."

5. SAME. *Argumentative statement in charge erroneous.*

  Courts should, as far as practicable, keep their views of the evidence and desire as to result of cases on trial from the jury. A statement in the charge which presents, in an argumentative way, the theory of one party to the prejudice of the other party, constitutes reversible error.

---

FROM SHELBY.

---

Appeal in error from the Criminal Court of Shelby County. J. J. DUBOSE, J.

B. J. KIMBROUGH, G. W. GORDON, TURLEY & WRIGHT, and GANTT & PATTERSON for Persons.

Attorney-general PICKLE for State.

TURNEY, Ch. J. On September 16, 1890, the dead body of Mrs. Mary J. Persons, wife of the prisoner, was found about one hundred and fifty feet from the rear of their dwelling. Near her left foot was a pistol with two chambers empty, blood on the handle, cylinder, and band, and two hairs, resembling hers, on the cylinder. In her right temple was a large irregular-shaped wound; on the left side of the head a smaller wound.

The prisoner was indicted for murder and convicted of manslaughter. He appeals. The theory of his defense is that she committed suicide, and testimony is introduced going to show a tendency and threats on her part to suicide. On the trial medical witnesses who had examined the wounds were introduced, who, after detailing the facts as they appeared to them, gave their respective opinions of the cause of the death and character of instrument by which it had been produced. The principal of these witnesses for the State made his examination under an order from the Judge of the Criminal Court; those for the defense under an employment from him, but without fixing the amount of compensation, they saying no amount was fixed, but they expected reasonable compensation; that they could not afford to perform such services gratis.

Upon the question of suicide His Honor charged the jury: "All things being equal, you are to presume that if Mary J. Persons was found dead that she did not die by her own hand. In all cases of sudden death the presumption of the love of life negatives the idea of suicide. It is true, however, that this presumption, of death other than by suicide, yields at once to any inference that may be logically inferred from the facts of the case."

This was error, because it left the jury to conclude that if the proof preponderated against the contention for suicide, or was evenly balanced,

then it was, by a rule of law, required to find against the insistence of the defense; that the defendant was not entitled to the benefit of a reasonable doubt, but must make out to the satisfaction of the jury that Mrs. Persons took her own life. It placed the defendant in the relation of prosecutor to make it clear that his wife had suicided before he could rely upon facts tending to show that she had done so, and before he could insist upon such facts as conducing to prove an hypothesis inconsistent with his own guilt.

When the defendant had shown conduct, declarations, and circumstances pointing to a suicidal intent, then it devolved upon the State to show satisfactorily and beyond a reasonable doubt it was not suicide, before the defendant could be deprived of the benefit of such reasonable doubt as his facts would create. The charge of His Honor reverses the rule, and puts the burden of full proof on the defendant. " Upon a charge of homicide, even when the body has been found, and although indications of a violent death be manifest, it shall still be fully and satisfactorily proved that the death was neither occasioned by natural causes, by accident, nor by the deceased himself." 1 Starkie Ev., 575.

This case is governed by the same rules as exist when one is charged with a homicide, and is allowed to show a purpose, a motive, or an effort on the part of another to take the life of the deceased; that he had planned and prepared and

threatened to do so. Such facts, when established in a case controlled by circumstantial evidence, have a tendency to establish an hypothesis inconsistent with the guilt of the accused, and to create a reasonable doubt of that guilt. The burden is upon the State to remove that doubt. So in the case before us it was the duty of the State, when it made and undertook to prove the charge that the prisoner had killed his wife, to do so by proof that excluded every hypothesis inconsistent with that charge fully, satisfactorily, beyond a reasonable doubt.

In civil cases, where one has been found dead, even with marks of violence, nothing else appearing, the presumption is that deceased did not commit suicide, as also that he or she was not murdered. *Insurance Company* v. *Bennett, ante,* p. 256.

It is contended the rules of evidence are the same in civil and criminal cases. Such is the general rule, but it does not follow that because the rule is the same that presumptions applicable in one are always applicable in the other. An antagonistic presumption may exist, and does in criminal cases—that is, the innocence of the defendant. That presumption of innocence does not allow the presumption of any fact against it. So the presumption that a deceased did not commit suicide cannot be applied in criminal cases against the presumption of innocence.

In his charge upon the weight of evidence His

Honor, after calling attention to expert testimony with the injunction that it should be jealously scrutinized, etc., said: "The retaining of experts by a fee proportioned to the importance of their testimony is now, in cases in which they are required, as customary as is retaining lawyers. No Court would take as authority the sworn statement of the law given by counsel retained on a particular side, for the reason that the most high-minded men are so swayed by an employment of this kind, as to lose the power of impartial judgment; and so intense is this conviction that there is no civilized community in which a Judge who receives a present from a suitor is not buried in disgrace. Hence it is that, apart from the partisan temper more or less common to experts, their utterances, now that they as a class have become retained agents of parties, have lost all judicial authority, and are entitled only to the weight which a sound and courteous criticism would award such utterances. This is true of such expert testimony not because it is intentionally false, but on account of the tendency of the mind in all manner of criticisms to adopt the view most favorable to a client or friend.

"But, as a matter of law, such employment and remuneration do not render them inadmissible as witnesses. On the other hand, when experts are appointed by the State, or by referees agreed on by the parties, and when such examinations, made by such experts, are not *ex parte*, but conducted with

notice to the opposite party, then the testimony is entitled to great weight."

It was highly proper in the Court to instruct the jury to scrutinize the testimony of experts. It was his duty to instruct them to look to their character, manner, and capability; to the circumstances that brought them in as witnesses; to the fact of compensation, and to what extent, if any, under all the circumstances, their credibility might be affected thereby; but it was error to say, in almost direct terms, that, while the medical experts introduced by defendant were admissible in law as witnesses, they were not entitled to credit. This error was intensified by that clause of the charge giving great weight to the testimony of the expert who had been appointed by the Court and introduced by the State. However remote it may have been from the purpose of the Court to effect such result, it is clear to us that, under the charge, the jury entirely disregarded the testimony of the medical witnesses for the defense, both as to the facts they deposed to and their medical and scientific opinions upon such facts. The charge weighs the evidence and passes upon the credibility of witnesses.

The Court also said to the jury: "An examination of a number of reported cases of suicide leads to the conclusion that generally the object of the self-destroyer is to produce death by a single blow; that if he or she uses a cutting instrument, the throat is selected; if he or she stabs

himself, the chest is selected, particularly the heart or belly; and if he or she shoots him or herself, it is generally through the head. It therefore becomes a subject of legitimate inquiry in this case whether or not the wound or wounds found on the person of the deceased were in a position likely to have been selected by her in seeking instantaneous self-destruction; or, can it be inferred only as a logical argument from the facts establishing the position, in connection with the character of these wounds, that they must have been inflicted by some person other than the deceased. Were there one or more wounds through or into the head of the deceased? If more than one, would either of these wounds have caused instantaneous death, or a degree of insensibility which would have prevented deceased from inflicting the other? disproving thereby the theory of the defense that these wounds were suicidal."

This is error. It is an argumentative statement by the Court of facts not derived from the evidence submitted to the jury, and had a tendency to impress the jury that the Court did not credit the testimony proposing to show that the two wounds might have been inflicted by a single shot.

Courts should use every caution, every care to keep juries from concluding they desire any particular result, and from using language calculated to so impress them. Of course we do not think His Honor meant to convey his opinion of the

merits of the case to the jury, but we do see that his language may have had that force.

Other errors have been assigned, but we deem it unnecessary to notice more of them.

Reverse and remand.