**Willie Daniel ROBINSON,
Plaintiff-in-Error,**

v.

**STATE of Tennessee, Defendant-in-Error.**

Court of Criminal Appeals of Tennessee.

April 20, 1974.

Certiorari Denied by Supreme Court
July 29, 1974.

Dan Garfinkle, Nashville, for plaintiff in error.

David M. Pack, Atty. Gen., William J. Haynes, Jr., Asst. Atty. Gen., Michael D. Noel, Asst. Dist. Atty. Gen., Nashville, for defendant in error.

WALKER, Presiding Judge.

## OPINION

On his trial for robbery by means of a deadly weapon, the jury found the defendant below, Willie Daniel Robinson, guilty of robbery and fixed his punishment at ten years in the penitentiary. From his conviction and sentence of five to ten years in the penitentiary, the defendant appeals in error, first challenging the weight and sufficiency of the evidence.

The defendant did not testify or offer any evidence.

The state's proof showed that on the afternoon of November 17, 1972, the

defendant parked his Cadillac automobile near the Kantor Furniture Company in Nashville. He and a passenger, Willie Clark, got out and walked up the street. A few minutes later the defendant came back to the Kantor Furniture Company where only two employees were at work. The defendant asked to see a bedroom suite and one of the employees, Nathan Lubanow, took him to the second floor where that furniture was located.

About 30 seconds later, Willie Clark entered and asked Joe Kirby, the other employee, to show him a couch that made into a bed. When Mr. Kirby leaned over to demonstrate how the bed worked, Clark put some instrument like a pistol in his back and ordered him into a back room. When Mr. Kirby went there he immediately left the store by a rear door and notified police. Clark had been employed at the store a short period in the past, at which time the back door was kept locked. Since his employment the door was kept unlocked on orders of the fire department. Mr. Kirby, however, had not seen either the defendant or Clark before this day.

Clark was surprised to see Mr. Kirby outside and ran. When a police officer with his description asked to talk to him, Clark fled with the officer in pursuit. Clark pointed a .38 caliber Smith and Wesson special revolver at the officer. That officer fired his pistol and killed Clark.

In the meantime other officers went to the second floor of the furniture store where Clark's companion, the defendant, was talking to Mr. Lubanow about a bedroom suite. The officers arrested the defendant and found on.him an empty shoulder holster and five or six bullets for the revolver found on Clark's body. The defendant gave written permission to search his automobile. It disclosed the furniture company's metal money box with $109.25. Clark's fingerprints were on it. The defendant's were not there.

In a written statement to the officers, the defendant said that he and Clark were cousins and had been riding around all day; the defendant noticed that Clark had a pistol in the car; that he (the defendant) had a holster in the car; he put on the holster and put Clark's pistol in it; that Clark later asked for his pistol and he returned it to Clark; that they parked the car in front of the Kantor Furniture Company and the defendant went into another business house; when he returned Clark was not in the car; that the defendant went into the Kantor Furniture Company and was taken to the second floor to see bedroom suites; while he was there the police came and searched him.

The state's theory was that Clark, as a former employee, was familiar with the layout of the store and that the defendant was an aider and abettor in the robbery; that the defendant led one of the employees from the scene while Clark perpetrated the robbery itself.

The jury believed the state's theory. The defendant has not shown that the evidence preponderates against the verdict and in favor of his innocence. State v. Grace, Tenn., 493 S.W.2d 474. This assignment is overruled.

■ The defendant contends that the court in its instructions erred by not defining aiding and abetting further than by charging T.C.A. § 39-109 on that subject. He offered no special request.

That statute provides:

"39-109. Aiders and abettors deemed principal offenders.—All persons present, aiding and abetting, or ready and consenting to aid and abet, in any criminal offense, shall be deemed principal offenders, and punished as such."

If the defendant considered these instructions meager, he should have presented a special request. In Flippen v. State, 211 Tenn. 507, 365 S.W.2d 895, and Freshwater v. State, 2 Tenn.Cr.App. 314, 453 S.W.2d 446, the court elaborated on this question, but we do not think the court erred here absent a special request. The

158

instructions as given were correct. The failure to give more ample instructions on aiding and abetting in the absence of a special request was not error. See Rowan v. State, 212 Tenn. 224, 369 S.W.2d 543; Butler v. State, 185 Tenn. 686, 207 S.W.2d 584; Hancock v. State, 1 Tenn.Cr.App. 116, 430 S.W.2d 892.

Where words and terms are in common use and are such as can be understood by persons of ordinary intelligence, it is not necessary, in the absence of anything in the charge to obscure their meaning, for the court to define or explain them. See William Terry Cook v. State, Tenn.Cr.App., 506 S.W.2d 955 (cert. denied March 18, 1974). We think the term "aiding and abetting" comes within that definition.

All assignments are overruled and the judgment is affirmed.

GALBREATH, J., dissenting.

RUSSELL, J., concurs.

GALBREATH, Judge (dissenting).

In all candor I concede the probability is great that the majority has reached the correct conclusion and that the plaintiff in error was guilty as an accomplice of the bandit who perpetrated the robbery that took place after the defendant had one of the store employees accompany him upstairs. However, as in any other area of probability, there exists an uncertainty as to the correctness of that conclusion based on the chance that the defendant, as the law presumes a defendant in a criminal case to be, was innocent and had no guilty knowledge that his companion would enter and rob the store while he was engaged in what purported to be on the surface a legitimate enterprise.

It was speculated by the jury that the defendant and his cousin acted in concert to rob the store. There is no evidence that they did so, as I read the record. That they probably did so is quite suggestive. That they might not have done so is not only as reasonable as is the everyday practice of two or more people coming to town together and upon arrival each going his separate way with an understanding, perhaps, that they will meet again at a later time for the return trip, but is in furtherance of the theory of innocence. While the law permits and encourages speculation and conjecture in support of innocence, it cannot tolerate such inference against innocence, except when some factor, such as the unexplained possession of recently stolen property is proved. See Tackett v. State, 223 Tenn. 176, 443 S.W.2d 450.

Under our system of criminal jurisprudence much emphasis is placed on the presumption of innocence. To this writer it is not a presumption that appeals to logic and is not one, I frankly submit, that is over indulged by jurors. After all, they see before them a person whom they know has been accused by some one of committing a crime. They know that some investigation of the accusation has in all probability been made by trained police. They have reason to believe further that the results of the police investigation have been turned over to the District Attorney General's office for evaluation. They then know for a certainty that a jury consisting of their fellow citizens have, after further investigation, found that a crime has, in fact, been committed and that there is probable cause to believe that the defendant is guilty of having committed the crime. Thus there appears before them one who has not once, but several times, been prejudged guilty. They are now asked to disregard all of the foregoing and "presume" what neither the victim, the witnesses, the police, the District Attorney General, nor at least twelve impartial fellow citizens also serving as jurors believed.

This understandable attitude is at odds with the powerful contemplation of law that the defendant is innocent:

"As to presumptions, it is settled law that while they may be indulged in crim-

inal cases, this cannot be done to deprive the defendant of the presumption of innocence as was done in this case.

"In Marie v. State, 204 Tenn. 197, 319 S.W.2d 86, presumptions are discussed, and it is said that a presumption is a substitute for evidence which, in the absence of direct evidence conflicting, requires as a matter of law that a certain fact conclusion be accepted or proved by the jury. In this case, Underhill's Criminal Evidence, 5th Ed., is quoted with approval as saying:

'So, though the decisions are not harmonious, the better and more reasonable view is that the law will not countenance any presumption, which by overcoming the presumption of innocence will cast the burden of proving his innocence upon the defendant.' Section 43, p. 66

"In the case of Persons v. State, 90 Tenn. 291, 16 S.W. 726, this Court said:

'It is contended the rules of evidence are the same in civil and criminal cases. Such is the general rule, but it does not follow, that because the rule is the same, that presumptions applicable in one are always applicable in the other, for an antagonistic presumption may exist, and does, in criminal cases; that is, the innocence of the defendant. That presumption of innocence does not allow the presumption of any fact against it.' 90 Tenn. 295, 16 S.W. 727.

"This case was decided in 1891, but it is still the law in Tennessee today."

Liming v. State, 220 Tenn. 371, 417 S.W.2d 769.

In People v. Molineux, 168 N.Y. 264, 61 N.E. 286, the New York Court of Appeals delineates:

" . . . the distinction between the civil law and our own more merciful common law. Under the former there is no presumption of innocence. A mere official charge of crime puts the accused upon his defense. His history is an open book, every page of which may be read in evidence by the prosecution. Every crime or indiscretion of his life may be laid bare to feed the presumption of guilt. How different is our own common law, which is the product of all the wisdom and humanity of all the ages! Under it the accused comes into a court of justice panoplied in the presumption of innocence, which shields him until his guilt is established beyond a reasonable doubt."

The presumption of innocence rests not on logic but on the humane fear that this very logic will cause the punishment of those who appear guilty but who are actually innocent. Thus it is incumbent on the State to prove not only the appearance of guilt but actual guilt, and that beyond a reasonable doubt.

"It is a cardinal and important rule of the law of evidence that the defendant in a criminal trial, however, degraded or debased he may be, must always be presumed innocent of the crime for which he is indicted until his guilt is proved beyond a reasonable doubt. Nothing need be proved nor is any evidence needed as a basis for this assumption. The presumption exists notwithstanding a failure by the accused to testify. The doctrine is based upon the well-recognized fact, which the courts judicially notice that men generally obey the rules of the criminal law, and upon the impossibility of obtaining, and the consequent injustice of requiring, affirmative proof from the accused that he has done so in the particular case. This presumption is merely stating concisely the rule that any party, whether the state or a natural person desirous of redress for an injury, who seeks the aid of a court of justice, has the burden of proving the existence or nonexistence of the facts he affirms or denies."

Underhill's Criminal Evidence, Fifth Edition § 41.

There was no evidence, direct or circumstantial, presented against the accused of such convincing nature to support anything stronger than a speculation of guilt. All of the facts found, including the bullets and the relationship of the defendant and the bandit, admitted of a hypothesis of innocence and failed utterly to exclude all reasonable hypotheses save that of guilt. In somewhat the same circumstances our Supreme Court supported us in a reversal of a murder conviction and said:

"It must be admitted in this case, as in most all cases, that there are some contradictions that could be construed as evidence of guilt. But, as we see it, these straws in the wind are not numerous or important enough to weave a net of guilt around the defendant from which he cannot escape. We cannot speculate a defendant into the penitentiary or permit a jury to do so.

\* \* \* \* \* \*

"From a careful reading of the record, the defendant may be guilty. On the other hand, he may be innocent. Some bits of evidence indicate one, some the other, but those bits of evidence indicating guilt do not meet the requirements heretofore defined."

State v. Crawford, 225 Tenn. 478, 470 S. W.2d 610.

While, as aforesaid, I personally would "guess" that the defendant participated in the crime charged, I can find no conclusive proof that he did, and recognizing the rationale of the old adage to the effect that it is better that the guilty escape than the innocent be punished, I would reverse the conviction. I, therefore, respectfully dissent.