# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### AUGUST 1999 SESSION

**FILED**

**December 30, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| Appellee, | ) | C.C.A. No. W1998-00558-CCA-R3-CD |
| | ) | |
| vs. | ) | Hardin County |
| | ) | |
| **GREGORY SCOTT BATTLES,** | ) | Hon. C. Creed McGinley, Judge |
| | ) | |
| Appellant. | ) | (DUI, Second Offense) |
| | ) | |

**FOR THE APPELLANT:**
**GREGORY SCOTT BATTLES** (pro se at trial)
P.O. Box 1345
Savannah, TN 38372

**CHARLES WATSON CROSS** (on appeal)
Attorney at Law
221 Fourth Ave, North
Nashville, TN 37219

**FOR THE APPELLEE:**
**PAUL G. SUMMERS**
Attorney General & Reporter

**R. STEPHEN JOBE**
Asst. Attorney General
425 Fifth Ave. North
2d Floor, Cordell Hull Bldg.
Nashville, TN 37243-0493

**G. ROBERT RADFORD**
District Attorney General

**JOHN OVERTON**
Asst. District Attomey General
P.O. Box 484
Savannah, TN 38372

OPINION FILED:_____

**AFFIRMED**

**JAMES CURWOOD WITT, JR., JUDGE**

## OPINION

The defendant, Gregory Scott Battles, appeals his Hardin County conviction and the resulting sentence by the trial court. A jury convicted the defendant of DUI, second offense, a Class A misdemeanor. After a sentencing hearing, the trial court imposed a sentence of eleven months, twenty-nine days, the first six months to be served in confinement and the remainder on probation. Also, the trial court fined the defendant $2000. In this appeal, the defendant raises the following issues:[1]

1. whether the indictment was sufficient;

2. whether the information provided in lieu of a bill of particulars should have limited the proof permitted at trial;

3. whether the state was required to provide names of all persons who witnessed the incident;

4. whether the defendant effectively waived his right to counsel;

5. whether the evidence resulting from the defendant's warrantless arrest should have been suppressed;

6. whether the defendant's examination of a witness was improperly limited by the trial court;

7. whether the state improperly cross-examined witness Cass;

8. whether the trial court properly charged the jury; and

9. whether the trial court improperly sentenced the defendant.

After a review of the record, the briefs of the parties, and the applicable law, we affirm the trial court's judgment.

The defendant was charged with DUI after the Tennessee Highway Patrol investigated an accident that occurred just after midnight on Monday morning, July 21, 1997. The evening before, the defendant was drinking at the Moose Lodge in Savannah, Tennessee. The bartender saw the defendant leave the bar. When she heard squealing tires, she looked in the closed circuit television

---

[1]We have framed and addressed defendant's issues differently than they were presented in his brief.

monitor, which had a view of the parking lot. She saw the defendant's truck back into another truck, striking it on the left side and pushing it eight feet to the side. She saw the defendant drive across the road. She rushed outside and saw the defendant back his truck into the parking lot, park it, and get out. The owner of the truck that was hit went outside and confronted the defendant. Another patron of the bar called the police.

A Tennessee Highway Patrol officer was dispatched to the accident scene. Because he could not respond immediately, he requested that a Hardin County deputy sheriff be sent to the accident scene. After the THP officer arrived, he interviewed the bartender and the owner of the struck vehicle. The officer administered two field sobriety tests to the defendant and arrested him after he failed both. The first test required the defendant to recite the alphabet. After making it half-way, the defendant became confused and could not complete the recitation. The second test was a heel-to-toe test. The defendant could not maintain his balance as he walked heel-to-toe and turned around. Both officers observed the defendant and testified that he appeared intoxicated because he slurred his speech and staggered when he walked.

The defendant was charged with DUI, second offense, and a jury found him guilty. He was fined $2000 and sentenced to eleven months, twenty-nine days. The trial court ordered him to serve six months in jail and the remainder on probation.

1.      **Sufficiency of the Indictment**

The defendant claims that the indictment was not sufficient because it omitted the specific location of the offense and, therefore, failed to inform him of the nature of the charge. He also asserts that it omitted the word "generally," which is used in the statute. See Tenn. Code Ann. § 55-10-401(a) (Supp. 1996). The defendant also asserts that he was prejudiced by the trial court reading the indictment to the jury.

"The indictment need not be specific regarding the time or place of the offense, nor need it demonstrate facts conferring jurisdiction as long as such facts are introduced at the trial." State v. Sowder, 826 S.W.2d 924, 929 (Tenn. Crim. App. 1991) (citing Tenn. Code Ann. § 40-13-207, -208 and -210). An exception to this general rule is made "when place constitutes a material element of the crime." State v. Furlough, 797 S.W.2d 631, 641 (Tenn. Crim. App. 1990) (citations omitted).

In the case at bar, an essential element of the defendant's offense is that the conduct occur "on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large." Tenn. Code Ann. § 55-10-401(a) (Supp. 1996). The indictment charges the defendant with conduct occurring "along, over and upon a public street, road, highway or public thoroughfare on or upon premises frequented by the public at large."

We conclude that the indictment was sufficient regarding the location of the offense. Location is an essential element of the offense, but the indictment alleged a location specific enough to show a violation of the statute. Also, an indictment is sufficient if it references the appropriate statute and also meets the requirements of Code section 40-13-202. See State v. Carter, 988 S.W.2d 145, 149 (Tenn. 1999) (citing State v. Hill, 954 S.W.2d 725, 726-27 (Tenn. 1997)). Indictments must "state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended." Tenn. Code Ann. § 40-13-202 (1997). In the case at bar, the indictment met this standard. The omission of the word "generally" did not render the indictment insufficient because the indictment described where the offense occurred using "ordinary and concise language" and it referenced the statute allegedly violated.

Finally, the defendant complains that the trial court read the indictment to the jury. The record does not support the defendant's contention that the trial court read the indictment to the jury. Accordingly, this issue is without merit.

2.  **Whether the information provided in lieu of a bill of particulars should have limited the proof permitted at trial.**

The defendant contends that in response to his request for a bill of particulars, the trial court "limited" the offense to the defendant's driving in the Moose Lodge parking lot. He argues that it was unfair surprise for the state to offer proof that he drove on a public road. He claims that the trial court should have declared a mistrial. The state responds that the defendant waived this issue by not making a contemporaneous objection. Regardless, the state argues that the state is not required to provide the defendant with its theory of the case, and the state is not limited to proving only matters identified in the bill of particulars. Further, the state contends that there was no unfair surprise because the indictment charged the defendant with driving upon a public road.

At the pretrial hearing in this case, the defendant moved for a bill of particulars. The trial court denied the motion and found that the indictment, in combination with the warrant, adequately advised the defendant of the nature of the charge. Before making this ruling, the following occurred:

> [DEFENDANT]: As this stands, I stand open to surprise here. My indictment doesn't even say where this occurred at. I may have to –
>
> THE COURT: I said that reference – reference to the word, I just now addressed that. It shows quite clearly it's alleged to have occurred on July 21st, alleged to have occurred in Hardin County, more specifically on the parking lot of an area known as the Moose Lodge is what the warrant referred.
>
> Do you feel that that is inadequate to inform you of your charges, that you're charged of driving under the influence *after an accident that occurred on the lot of the Moose Club*?
>
> [DEFENDANT]: We are in agreement that it occurred on the parking lot of the Moose lot. (Emphasis added.)

5

The defendant complains that the location of the offense contained in the indictment was "limited" by the trial court[2] in response to his request for a bill of particulars. He alleges that it was improper to present evidence that was outside of the indictment as limited.

Vicki Hunt testified at trial. She was a bartender at the Moose Lodge and witnessed the accident. While watching a monitor which showed the Moose Lodge parking lot, she saw the defendant's truck strike the other truck in the parking lot and then saw that he "pulled out across the road." She said that she went outside and saw the defendant's truck stopped on the other side of the county road on which the lodge is located. She stated that he then backed into the parking lot and parked his truck. The defendant did not object during this testimony.

After the state rested, the defendant moved for a mistrial. He stated that it was surprise for the state to offer testimony showing that the offense occurred somewhere other than the parking lot of the Moose Lodge. He relied on the statements made during the pretrial hearing describing the offense as occurring in the parking lot. The defendant complained that he was "told nothing about another road in my discovery." The defendant stated that he needed to call other witnesses now that the state has presented evidence showing the offense occurred off the parking lot; however, the defendant did not request a recess. The trial court denied the motion for a mistrial.

The primary purpose of a bill of particulars is to provide the defendant with information about the details of the charge, if necessary to the preparation of his defense. See State v. Speck, 944 S.W.2d 598, 600 (Tenn. 1997); State v. Byrd, 820 S.W.2d 739, 741 (Tenn. 1991). It also serves to avoid prejudicial surprise and to enable the defendant to preserve a plea against double jeopardy. Byrd, 820 S.W.2d at 741. See also State v. Hicks, 666 S.W.2d 54, 56 (Tenn. 1984). A bill of particulars is not, however, a discovery device; it is limited to information a

---

[2]    We would characterize what occurred at the pretrial hearing as the trial court facilitating a stipulation between the parties that *the accident* occurred in the Moose Lodge parking lot.

**6**

defendant needs to prepare a defense to the charges. Tenn. R. Crim. P. 7(c) (Advisory Commission Comments).

First, we cannot say that the defendant failed to make a timely objection to the allegedly surprising testimony. Although the defendant did not object to the introduction of the testimony at the time it was first introduced, he raised the issue after the witness testified and the state rested its case and again in his motion for new trial. See State v. Tony Murphy McKinney, No. 03C01-9709-CR-00392, slip op., at 4 (Tenn. Crim. App., Knoxville, Sept. 14, 1998) (finding objection was not untimely when defendant brought the matter to the attention of the trial court within a very brief period of time).

Our supreme court has said, "The state may not press their prosecution on a theory upon which the defendant has not been informed or has been misled." State v. Wilcoxon, 772 S.W.2d 33, 39 (Tenn. 1989). However, in the present case, we conclude that the defendant was neither misled nor misinformed about a theory of the prosecution. The indictment encompassed driving under the influence both on private property frequented by the public and on a public road. The "stipulation" fostered by the trial court indicated that the *collision* occurred in the Moose Lodge parking lot but that the DUI offense occurred *after* the collision. The trial court did not recite that the DUI offense was committed prior to or during the collision and did not recite that the offense occurred in the parking lot.

Essentially, the state's theory of the case was that, as a continuing offense, the defendant drove while under the influence in a place frequented by the public and on a public road. Although the substance of some of Hunt's testimony may have been surprising to the defendant, he was not misled or misinformed as to any theory. Surprise resulting from unanticipated aspects of a witness's testimony is a risk born by the litigants in any trial, especially in criminal proceedings where discovery depositions or interrogatories are not used. Moreover, the state is afforded the opportunity to prove its case. As an aside, we note that, in the light most favorable to the state, the evidence supports a finding that, while intoxicated,

**7**

the defendant drove on a public road, that he also drove on private property, and that members of the public frequented the parking lot on private property.

We find no error in either the trial court's proceeding on this issue or the failure to grant a mistrial.

**3.** **Whether the state was required to provide names of all persons who witnessed the incident**

The defendant claims that the state withheld the names of persons who had knowledge of the offense or were witnesses to it. He contends that the state should have disclosed the name of the person who reported the accident to the police and the names of all those who were at the scene. The defendant argues that the state was required to provide the names after he filed his Rule 16 discovery motion. He admits that the state did not call as a witness the person who reported the accident. The state responds that it was not required to investigate and inform the defendant of all potential witnesses to the offense. The state contends that it complied with Rule 16 of the Tennessee Rules of Criminal Procedure.

At the pretrial hearing the defendant requested disclosure of the name of the person whom the state identified only as the record keeper of the Moose Lodge. The trial court ruled that the state was not required to investigate and provide the name of the custodian of the Moose Lodge records.

At trial, the defendant introduced the highway patrol's accident report, which showed that the portion for listing witnesses to the accident had not been completed. Sergeant Tony Scott of the Tennessee Highway Patrol testified that completion of the witness portion of the accident report was not required.

There is no general constitutional right to discovery in a criminal case. See Pennsylvania v. Richie, 480 U.S. 39, 107 S. Ct. 989 (1987); Weatherford v. Bursey, 429 U.S. 545, 97 S. Ct. 837 (1977). The state is not obliged to make an investigation or to gather evidence for the defendant. See State v. Reynolds, 671

**8**

S.W.2d 854, 856 (Tenn. Crim. App. 1984). The discovery rules do not require disclosure of information not known by the state. Tenn. R. Crim. P. 16(a). Rule 16 permits the defendant to discover any statements made by him, his prior record, documents and tangible objects, and reports of tests and examinations, but only to the extent that the information is in the "possession, custody or control of the state." Id.; see also State v. Martin, 634 S.W.2d 639 (Tenn. Crim. App. 1982) (Rule 16 does not provide for the discovery of prosecution witnesses).

Also, Code section 40-17-106 directs the district attorney general to identify on the indictment witnesses intended to be called at trial. Tenn. Code Ann. § 40-17-106 (1997); see also State v. Harris, 839 S.W.2d 54, 69 (Tenn. 1992) (provisions of § 40-17-106 are directory only and do not necessarily disqualify a witness whose name does not appear in the indictment from testifying). However, the defendant is not complaining that the undisclosed persons testified at the trial.

The defendant's reliance upon discovery to provide him with the names of witnesses to the offense is misplaced. The defendant does not claim that the witnesses had exculpatory information which would implicate a Brady violation.[3] Rather, the defendant desired that the state perform his investigative work and report its findings to him. He has demonstrated neither his entitlement to this information nor how he was prejudiced by not receiving it. Accordingly, this issue is without merit.

4.      **Whether the defendant effectively waived his right to counsel**

The defendant claims that he did not validly waive his right to counsel because the trial court did not properly investigate whether his waiver was intelligently given. He argues that the trial court should have informed him of the

_____

[3] In Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963), the United States Supreme Court held that the prosecution has a constitutional duty to furnish the accused with exculpatory evidence pertaining to either the accused's guilt or innocence and the punishment that may be imposed. Failure to reveal exculpatory evidence violates due process where the evidence is material either to guilt or punishment, irrespective of good faith or bad faith of the prosecution. Id. at 87, 83 S. Ct. at 1196-97.

potential fines and sentences that could have been imposed. Also, he contends that the trial court never inquired into his education, background, or experience. The state responds that the defendant's waiver was timely asserted and was clear and unequivocal. The state contends that although the trial court did not explicitly follow a litany of questioning, the trial court did thoroughly question and admonish the defendant in making its determination that the waiver was made knowingly and intelligently.

At the defendant's arraignment after the defendant indicated that he had secured counsel that was not a licensed attorney, the trial court gave the defendant three options:

> (1) You can secure legal counsel, which the definition for is an attorney licensed to practice in this state of Tennessee or one that is licensed in another state that complies with our supreme court rules that allows them to practice on a particular case in this state. That's number 1.
>
> (2) You are permitted by our United States Constitution to represent yourself – a right of self-representation. If you desire, the Court will certainly allow you to do that. I do not encourage it because there are many pitfalls for people that are not trained in the law. They can read certain things and get erroneous ideas; okay? But you, if you wish to, will be allowed to represent yourself. That's self-representation.
>
> (3) The third possibility is – I've got the Public Defender. He's actually in the courtroom at this time. If you wish to confer with him, if you qualify – that means if you're unable to afford an attorney – then I will appoint the Public Defender to represent you throughout every stage of this action.

The defendant responded that he was "appearing today *in propria persona.*"[4] When asked what the Latin words meant, the defendant did not know. The following colloquy ensued:

> DEFENDANT: I'm here to represent myself with the assistance of counsel of choice. I'm not asking for anybody to represent me.
>
> THE COURT: Are you insisting that you be allowed to represent yourself in a legal capacity?
>
> DEFENDANT: With the assistance of counsel.

---

[4]Latin for "in one's own person or right."

**10**

THE COURT: All right. Is this counsel of choice someone that is licensed to practice in the state of Tennessee?

DEFENDANT: No.

THE COURT: Then they will not be allowed to legally represent you. As a matter of fact, they would be subject to criminal prosecution if they did so. Do you understand this?

DEFENDANT: Would you repeat the question so I can make sure I understand --

THE COURT: If it is not a licensed attorney – If they are giving you legal advice, then they are, in all likelihood, violating our criminal law. Do you expect me to engage in a process that would allow someone to violate – or would encourage someone to violate the criminal laws?

DEFENDANT: I'm not asking for anybody to represent me.

THE COURT: Okay.

DEFENDANT: I'm asking for help to hand me papers to keep my papers in order – not to speak for me.

THE COURT: All right.

DEFENDANT: To assist to help me.

THE COURT: I wouldn't have any objection to that. But they will not be seated at counsel table unless they are a relative. Sometimes I do that if it's a relative or a paralegal or a licensed lawyer. But this person is not allowed to give you legal advice; do you understand that?

DEFENDANT: Yes.

THE COURT: Okay.

DEFENDANT: They are not allowed to give me legal advice.

THE COURT: Are you asking for a court appointed attorney?

DEFENDANT: No.

THE COURT: Are you waiving your right to an attorney?

DEFENDANT: I'm not waiving my right to counsel.

THE COURT: Are you waiving your right to a licensed attorney representing you?

DEFENDANT: (No response.)

THE COURT: I'm not playing games with you. In other words, I'm not trying to trick you. But for the purpose of the integrity of the legal process, I'm not going to allow someone to come in here and masquerade as an

**11**

attorney when they're not licensed to do so. If you want an attorney to represent you and you're unable to afford an attorney, I will appoint one to represent you. It's pretty simple.

DEFENDANT: I do not wish to have anybody represent me, but --

THE COURT: Are you insisting on your constitutional right of self-representation?

DEFENDANT: With the assistance of counsel.

THE COURT: All right. Let the record reflect – Do we have a form for a waiver of counsel?

[PROSECUTOR]: I don't have one in here.

THE COURT: All right. If you'll prepare one. Just show that in open court he has waived his right to the appointment of a licensed attorney to represent him and is insisting upon his right of self-representation.

DEFENDANT: I object to that. I waive no right at no time including my right to --

THE COURT: [PUBLIC DEFENDER], you will be appointed to assist as elbow-counsel.

Do you see this gentleman back there?

DEFENDANT: I object to that.

THE COURT: He's just going to be in the courtroom. If you wish to consult with him at any time, you may do so. Do you object to that?

DEFENDANT: Well, I object to him even being in the courtroom.

THE COURT: All right then. [PUBLIC DEFENDER], you won't be representing him. You won't even be elbow-counsel. He's waived his right here in open court.

DEFENDANT: I object. I've not waived --

THE COURT: You have by your statements; okay? All right. Are you ready to proceed with this matter?

DEFENDANT: Let's proceed.

The defendant was then arraigned for the offense of driving under the influence.

At the pretrial hearing, the following colloquy ensued:

THE COURT: This case, Mr. Battles, you're representing yourself. Earlier I offered to appoint the public defender's office. You specifically rejected the offer of that appointment; however, I'm going to ask that [PUBLIC DEFENDER] remain present during any of your proceedings so that if any time you wish to confer with counsel, you may confer with him, okay?

I mean, you've got a constitutional right to represent yourself, which you have indicated you intend to exercise, which is fine, but I do want you to know that should you feel the need, [PUBLIC DEFENDER] will be present. He is the public defender in this district, and you may consult with him if you wish or desire, okay?

DEFENDANT: Well, I'm appearing here *in propria persona*, and I do have counsel of choice here.

. . .

DEFENDANT: I'm not asking for anybody to represent me.

THE COURT: Okay.

DEFENDANT: I'm just asking for my 6th amendment right to counsel of choice to assist me.

THE COURT: I've dealt with this before. I don't know what else to say on that. I'm not going to allow someone who is not a lawyer to sit up there and advise you on legal matters.

DEFENDANT: So are you denying me my 6th amendment right to counsel of choice?

THE COURT: I'm not denying your 6th amendment right. I'm denying you what you referred to as counsel of choice who is an unlicensed person to sit at the table with you and assist you.

You can confer during these proceedings, anyone that's in the public courtroom. You can talk with anybody you want to, but if they give you legal advice, they're breaking the law.

DEFENDANT: They wouldn't be giving me legal advice, just to help me take notes and keep my papers in order. This person is my godmother. She has been every since my mother passed away.

THE COURT: And you are asking that they do what? I don't understand.

DEFENDANT: Just assist me, be my counsel of choice, take notes and help keep my papers in order.

After this exchange, the trial court permitted the defendant's godmother to assist him with his papers and notes, and the defendant presented several motions and examined several witnesses.

The right to assistance of counsel in the preparation and presentation of a defense to a criminal charge is grounded in both the Tennessee and the United States Constitutions. Tenn. Const. art. 1, § 9; U.S. Const. amend. VI. Conversely,

there also exists an alternative right -- the right to self-representation -- which is founded on the Sixth Amendment.  See Faretta v. California, 422 U.S. 806, 819, 95 S. Ct. 2525, 2533 (1975); State v. Small, 988 S.W.2d 671, 673 (Tenn. 1999) (citing State v. Melson, 638 S.W.2d 342, 359 (Tenn.1982)); State v. Northington, 667 S.W.2d 57 (Tenn. 1984).

There are three pre-conditions which must be satisfied before a defendant's right to self-representation becomes absolute. "First, the accused must assert the right to self-representation timely. Second, the accused's request must be clear and unequivocal. Third, the accused must knowingly and intelligently waive the right to the assistance of counsel." State v. Herrod, 754 S.W.2d 627, 629-30 (Tenn. Crim. App. 1988) (citations omitted).[5]

With respect to the first pre-condition, we conclude that the defendant timely moved to assert his right to self-representation. The issue was first raised during his arraignment and again at his pretrial hearing. See State v. Mark Bodine, No. 03C01-9111-CR-368 (Tenn. Crim. App., Knoxville, March 25, 1994) (a valid waiver must be made prior to trial or not at all). The second pre-condition is also satisfied. The defendant, although confusing in his use of the term "counsel," was very clear and unequivocal in stating that he wished to represent himself and did not want a licensed attorney to represent him.

It is the third pre-condition which proves the most difficult to determine, whether the waiver was made knowingly and intelligently. Although the defendant persisted in using his own, incorrect, definition of "counsel," he was adamant that he wanted to represent himself. The trial court admonished the defendant that he was getting some bad advice, based upon the defendant's misuse of legal terminology. The trial court noted on the record that the person the defendant wanted as "counsel of choice" had previously aided and participated in cases of a similar nature where defendants had represented themselves.[6]

_____

[5]Rule 44(a) of the Tennessee Rules of Criminal Procedure requires a written waiver of the defendant's right to counsel. Although the trial court requested the state to prepare a waiver, the record before us does not contain a written waiver of the defendant's right to counsel signed by the defendant.

However, we note that the defendant has stated in each of his written motions that he was appearing *in propria persona*. We find that this assertion of self-representation is sufficient to satisfy the written waiver requirement because these motions were initiated by the defendant and the assertion was made repeatedly. Additionally, after he was questioned about the definition of *in propria persona* by the trial court, the defendant began using the term "*pro se*" in his motions and court filings.

[6]We also note that the defendant called as a witness Ronald Bret Cass, who testified that he was a good friend of the defendant and had previously

**15**

The trial court attempted to dissuade the defendant from representing himself and offered to provide a public defender for the defendant, to which the defendant objected. The defendant objected to the public defender's mere presence in the courtroom. The trial court told the defendant, "you're on your own." When the trial court explored whether the defendant understood the nature of the charges against him, the defendant said that he did not understand, but then he began arguing to the court that the charge did not apply to him. His argument belied his contention that he did not understand the charge against him.

Additionally, we note that the defendant cited numerous authorities in his arguments before the trial court, although his legal reasoning left much to be desired. The defendant's effort at self-representation, as admirable as it was ineffective, serves to validate the trial court's decision that the defendant made a knowing decision to represent himself. See State v. Franklin, 714 S.W.2d 252, 261 (Tenn. 1986) ("Although a defendant's actual *pro se* trial performance itself is not relevant to determining the competency of a waiver of counsel, his personal conduct during trial is relevant to the judge's determination that a defendant . . . 'is making a knowing decision on his part' to participate in his defense.") (citing State v. Northington, 667 S.W.2d 57, 61 (Tenn.1984)).

After a full review of the record we can only conclude that the defendant employed the tactics described in a deliberate effort to induce and cause reversible error. See State v. Chadwick, 224 Tenn. 75, 78, 450 S.W.2d 568, 570 (1970) ("A defendant should not be permitted to subvert and nullify the whole judicial process by any such ruse or stratagem."). Our supreme court has said that a "judge must investigate as long and as thoroughly as the circumstances of the case before him demand." State v. Northington, 667 S.W.2d 57, 60 (Tenn. 1984).

This court has promulgated a litany of questions to be asked to ensure that a defendant's waiver of the right to counsel was made knowingly and intelligently. Smith v. State, 987 S.W.2d 871, 877-78 (Tenn. Crim. App. 1998).

represented himself under similar circumstances.

**16**

Although in the case at bar the trial court asked some of the questions listed in Smith, it was thwarted in its effort to make a complete investigation by the defendant's obstinate assertion that he wanted to represent himself. We conclude that under the circumstances the trial court adequately investigated whether the defendant knowingly and intelligently waived his right to counsel.

5.      **Whether the evidence resulting from the defendant's warrantless arrest should have been suppressed.**

The defendant claims that his arrest for DUI was illegal and, therefore, any evidence obtained by his arrest is inadmissible. He argues that because the offense was not committed in the presence of the arresting officer and the officer did not have a warrant for his arrest, the arrest was illegal. The defendant contends that the offense occurred on private property and the arresting officer did not have probable cause to arrest him. The state responds that Code section 40-7-103(a)(6) permits an officer to arrest the driver in an accident if the officer has probable cause to believe the driver was driving under the influence. The state argues that testimony at the pretrial hearing established that the arresting officer had probable cause to believe the defendant was driving under the influence.

The relevant portion of section 40-7-103 states:

(a) An officer may, without a warrant, arrest a person:
. . .
(6)  At the scene of a traffic accident who is the driver of a vehicle involved in such accident when, based on personal investigation, the officer has probable cause to believe that such person has committed an offense under the provisions of title 55, chapters 8 and 10. The provisions of this subdivision shall not apply to traffic accidents in which no personal injury occurs or property damage is less than one thousand dollars ($1,000) unless the officer has probable cause to believe that the driver of such vehicle has committed an offense under § 55-10-401. . . .

Title 55, chapter 8 deals with the rules of the road, and chapter 10 deals with accidents, arrests, crimes, and penalties involving motor vehicles. Section 55-10-401 describes the offense of driving under the influence. The statute creates an exception to the rule that an officer may not make a warrantless misdemeanor

arrest unless the offense was committed in the officer's presence. See State v. Smith, 787 S.W.2d 34, 35 (Tenn. Crim. App. 1989).

This issue turns on whether the arresting officer had probable cause to believe that the defendant was driving under the influence. Tenn. Code Ann. § 55-10-401(a) (Supp. 1996). Tennessee Highway Patrolman Tony Barnham testified during the pretrial hearing that he investigated the defendant's accident. He said that he arrested the defendant based on the defendant's condition. He testified that the defendant appeared to be intoxicated. Officer Barnham admitted that the Moose Lodge was a private club. However, during the trial, he testified that he had probable cause because "just seeing people out there would be reason enough for [him] to believe [the parking lot was] frequented by the public."

The officer determined that the defendant was driving a vehicle involved in an accident. He also had probable cause to believe that the defendant was driving under the influence in a place generally frequented by the public. We conclude that the defendant's arrest was lawful and in accordance with Code section 40-7-103(a)(6). Accordingly, this issue is without merit.

6.      **Whether the trial court improperly limited the defendant's examination of witness Hunt**

The defendant claims that he had a right to question witness Vicki Hunt, who was a bartender at the Moose Lodge. He contends that he was not permitted to cross-examine the witness regarding her training for her server permit. Also, he contends that on direct examination of Hunt as a defense witness, he was not permitted to show witness bias by questioning her on events that transpired at the Moose Lodge. The state responds that the defendant was permitted to question Hunt about her training. The state argues that Hunt never gave an opinion based on her experience as a bartender; therefore, questions concerning the foundation of her opinion were not relevant. Also, the state contends that the defendant was attempting to show that both Hunt and Moose Lodge members were biased against him. The state argues that the defendant was permitted to question Hunt regarding

bias and that the trial court only restricted the questioning when the defendant strayed too far afield.

Vicki Hunt testified for the state that she served the defendant two beers and two shots of tequila. When asked if she thought that the defendant had too much to drink to be driving a car, she answered, "If I thought he was, I . . . wouldn't have let him leave."

During the defendant's cross-examination of Ms. Hunt, the trial court overruled the state's relevancy objection when the defendant began questioning Ms. Hunt about her server permit. The defendant continued to question Ms. Hunt about her qualifications and the amount of alcoholic beverages that she should serve customers. When the defendant asked her about the rate the human liver can rid itself of alcohol, the state again objected. The trial court sustained the objection and told the defendant that it "makes no difference if a person is served legally or not. The question is whether or not somebody was driving under the influence." The defendant next asked her whether she had to take a course to receive her permit. The trial court again sustained the state's objection and pointed out that it had ruled that "this line of questioning is inappropriate."

Ms. Hunt also testified for the defendant during his case-in-chief. The defendant questioned her about a complaint he had filed against certain members of the Moose Lodge. The state objected to its relevance. The defendant responded that he was attempting to show bias on the part of several members of the Moose Lodge. The defendant said that the question also went toward the witness's credibility. The trial court permitted the defendant to ask the question. After the defendant asked Ms. Hunt about the details of how she found out about the complaint the defendant made, the trial court stopped the defendant. It said, "I'm not here to try the internal workings of the Moose International, all right. Let's get on with the trial of this case." After the witness expressed a desire to answer the question, the trial court stated, "I just said I want to get to the point, and I want to try a DUI case. I don't want to try what's happening as far as Moose Lodge,

okay." The defendant then wrapped up his direct examination by asking Ms. Hunt whether the members of the Moose Lodge were biased against him because he complained about the lodge having male strippers. She said that she did not know.

The Sixth Amendment guarantees a criminal defendant the right to cross-examine witnesses against him. See, e.g., Davis v. Alaska, 415 U.S. 308, 94 S. Ct. 1105 (1974). The rights of confrontation and cross-examination are essential to a fair trial. See, e.g., Pointer v. Texas, 380 U.S. 400, 85 S. Ct. 1065 (1965). Rule 616 of the Tennessee Rules of Evidence provides that "[a] party may offer evidence by cross-examination, extrinsic evidence, or both, that a witness is biased in favor of or prejudiced against a party or another witness." Rule 611(b) provides that a witness "may be cross-examined on any matter relevant to any issue in the case, including credibility." Any "feelings that a witness has with regard to a party or issue are an important factor for the trier of fact to consider in assessing the weight to be given to the witness' testimony." State v. Williams, 827 S.W.2d 804, 808 (Tenn. Crim. App. 1991).

In the case at bar, Ms. Hunt's qualifications as a bartender were not relevant to any of the issues being tried. Evidence which is not relevant is not admissible. Tenn. R. Evid. 402. The propriety, scope, and control of witness cross-examination is within the trial court's discretion and will not be overturned absent clear and plain abuse. State v. Richardson, 875 S.W.2d 671, 675 (Tenn. Crim. App. 1993). Accordingly, we conclude that the trial court properly exercised its discretion in limiting the defendant's cross-examination.

With respect to the defendant's direct examination of Ms. Hunt, the defendant initially argued that his line of questioning was relevant to the witness's credibility. The defendant continued to question the witness about the complaint he had filed against the Moose Lodge. After the trial court stopped that line of questioning, the defendant asked a direct question about the bias of Moose Lodge members against the defendant which the witness answered. We conclude that the

**20**

trial court did not prevent the defendant from examining Ms. Hunt regarding any relevant material.

**7.         Whether the state improperly cross-examined witness Cass**

The defendant claims that the state improperly attempted to impeach Ronald Cass by inquiring about Cass's prior DUI charges.  The state asked Cass whether he knew the defendant, to which the witness said that he and the defendant were "good friends."  The state asked Cass if he had been in a similar position a year ago, making similar arguments as the defendant, that the officers did not have the right to arrest him.  After the defendant objected, the trial court ruled that the question was proper as it went toward bias.  The state then asked, "You were taking the position that the law enforcement officers in that case didn't have a right to arrest you for DUI?"  The defendant objected again.  The trial court overruled the objection and stated, "It can go to bias of the witness.  It's not to be considered as any evidence of guilt against this person, simply as to any bias that might or might not exist."

Unless excluded by another rule, relevant evidence is generally admissible.  Tenn. R. Evid. 402.  Rule 616 permits a party to "offer evidence by cross-examination . . . that a witness is biased in favor of or prejudiced against a party or another witness."  Tenn. R. Evid. 616.  Bias is an important ground for impeachment of a witness and is an aid for the trier of fact in assessing the weight to be afforded the witness's testimony. See Tenn. R. Evid. 616 (Advisory Comm'n Comments); State v. Reid, 882 S.W.2d 423, 427 (Tenn. Crim. App. 1987).  In the case at bar, the state attempted to show bias of the witness through the witness's close relationship with the defendant and the witness's similar argument in his previous trial for DUI.  Accordingly, the evidence was relevant.

Relevancy established, we must determine whether some rule of evidence nevertheless prohibits the use of the evidence.  Evidence that a person may have driven while under the influence is, of course, disparaging information.  Tennessee Rules of Evidence 404 and 608 deal with some evidence of bad

**21**

behavior or bad character. Rule 404(b) forbids the use of "other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity with the character trait." Tenn. R. Evid. 404(b). However, rule 404 is not brought into play because Cass's behavior in conformity with a character trait was not an issue. Rule 608(b) prescribes rules for using "specific instances of conduct of a witness" for the purpose of impeaching the witness. Such instances must be "probative of truthfulness or untruthfulness," Tenn. R. Evid. 608(b), but driving under the influence is not suggestive of truthfulness or untruthfulness. See State v. Jimmy Blanton, No. 01C01-9306-CR-00166, slip op. at 6 (Tenn. Crim. App.,Nashville, Apr. 7, 1994). However, even though the state sought to impeach witness Cass, it sought to do so through a demonstration of bias under Rule 616 and not through establishing prior bad acts under Rule 608. The court gave a curative instruction immediately after the state mentioned the witness's DUI trial, and we conclude that any violation of Rule 608(b) was undoubtedly harmless. Tenn. R. App. P. 36(b); see State v. Laney, 654 S.W.2d 383, 389 (Tenn. 1983) (jurors are presumed to follow the instructions given by the trial judge).

This analysis aside, we are left to consider Rule 403, which provides that evidence, although relevant, may be excluded if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative issues." Tenn. R. Evid. 403. A witness's DUI offense would raise a Rule 403 issue if, for example, it unfairly prejudiced the interests of the party sponsoring the witness; however, we conclude that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice or by any other issue mentioned in Rule 403. Several factors support this conclusion. As pointed out above, the memory or possible pendency of the witness's DUI charges and his corresponding interest in the favorable outcome of the defendant's DUI case provide a powerful basis for bias impeachment under Rule 616. The witness impeached was not the defendant, and the trial court gave precautionary instructions to the jury.

The admissibility of evidence is entrusted to the discretion of trial court, and the issue will not be overturned on appeal absent an abuse of discretion. State v. Harris, 839 S.W.2d 54, 66 (1992). There is no abuse of discretion in the present case.

Also, the defendant claims that the state testified when it asked Cass about the location of private property signs which the state said it could not find. During the state's cross-examination of Ronald Cass, the state attempted to prove that the parking lot was not marked as a private lot. The following colloquy ensued:

> [STATE]: Mr. Cass, it's got signs all over the parking lot out there?
>
> [WITNESS]: They've got a couple of signs out there.
>
> . . .
>
> [STATE]: I drove out there Friday afternoon just to kind of look around to see what the lot looked and I missed the signs. Can you tell me exactly where they are located?

The defendant claims that the trial court allowed the state to testify. Initially, we note that the defendant failed to object to the state's question; therefore, this issue is waived. See Tenn. R. App. P. 36(a); see also State v. Renner, 912 S.W.2d 701, 705 (Tenn. 1995). However, even considering the merits, there was no reversible error. The state in the case at bar injected his own credibility as a state officer into his cross-examination of a defense witness. See State v. Griffis, 964 S.W.2d 577, 598-99 (Tenn. Crim. App. 1997). Unlike State v. Hicks, 618 S.W.2d 510, 518 (Tenn. Crim. App. 1981), in which this court held the prosecutor's conduct improper for referring to matters outside the record, in the case at bar, the state mentioned facts which had been previously introduced into evidence. The arresting officer testified at the beginning of the trial that there were no signs posted in the parking lot. The state said that it "missed" the signs, and although not proper, we do not find this was either egregious or prejudicial in light of the prior testimony. Accordingly, we cannot say that the remark by the state "more probably than not affected the judgment" in this case. Tenn. R. App. P. 36(b).

8.      **Jury Charge**

*a)          Whether the trial court properly instructed the jury as to the elements of the offense.*

The defendant claims that the trial court erred by charging the jury with all the elements of the offense contained in the statute. He argues that because he was told the accident occurred on the Moose Lodge parking lot, the jury should not have been charged with the full statute, which includes driving upon public highways and roadways.

Initially, we note that the defendant failed to make appropriate references to the record, and he has failed to cite authority to support his argument. Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. Rule 10(b). However, we will address the merits of the defendant's issue.

The defendant is entitled to a complete and correct charge of the law. State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990), including the law governing the issues raised by the evidence. State v. Zirkle, 910 S.W.2d 874, 892 (Tenn. Crim. App 1995). The state presented evidence that the defendant was intoxicated and that he drove on a public road and on a parking lot that was generally frequented by the public at large. The jury charge in the case at bar contained the elements necessary to prove driving under the influence and did not charge an offense different from the one on which the appellant was indicted. See State v. Davis, 656 S.W.2d 406, 409 (Tenn. Crim. App. 1983). Accordingly, we conclude that the jury charge was not improper.

*b)          Whether the trial court correctly refused to charge the jury on terms of common understanding.*

The defendant requested that the jury be charged with strictly following the statute and with the definitions of three words used in the statute: "generally," "frequented," and "public." The defendant also requested that the jury be charged with the legal meaning of probable cause. He argues that these instructions were necessary for the jury to strictly interpret the statute. The state contends that the

**24**

statute uses terms which are common and can be understood by persons of ordinary intelligence. The state argues that the trial court's instruction defining the offense of DUI fully and fairly stated the applicable law. Additionally, the state points out that, although not relevant, the legal definition of probable cause came out during the defendant's cross-examination of the arresting officer.

This court has explained that "a defendant has a constitutional right to a correct and complete charge of the law." State v. Phipps, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994) (quoting State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990)). It is not error for the trial court to refuse to give a specially requested jury instruction so long as the court's instructions "correctly, fully, and fairly set forth the applicable law" in the case. Id.; see also State v. Kelley, 683 S.W.2d 1, 6 (Tenn. Crim. App. 1984). On appeal, this court must "review the entire charge and only invalidate it if, when read as a whole, it fails to fairly submit the legal issues or misleads the jury as to the applicable law." The jury instructions should describe and define all of the elements of each offense unless the terms are of common use and understanding. See State v. Summers, 692 S.W.2d 439, 445 (Tenn. Crim. App. 1985); Robinson v. State, 513 S.W.2d 156, 158 (Tenn. Crim. App. 1974). In the case at bar, the jury was charged with the elements of Code section 55-10-401. The phrase used in the charge, "premises which are generally frequently [sic] by the public at large," used no technical terms. Rather, it is a phrase comprised of terms of common use and understanding.

Also, the defendant complains that the jury was not charged with the definition of "probable cause" with respect to his claim that the arrest was illegal. Presumably, the object of the defendant's concern is the use of evidence of his intoxication, such as the results of field sobriety tests, which arguably would be inadmissible as fruits of the poisoned tree if obtained subsequent to an illegal arrest. The trial court correctly ruled that the issue of the legality of the arrest was not an issue properly before the jury and no instructions regarding that issue would be given. Indeed, questions of admissibility of evidence are generally entrusted to the discretion of the trial judge. State v. Stinnett, 958 S.W.2d 329, 331 (Tenn. 1997);

<u>see</u> Tenn. R. Evid. 104(a) (questions of admissibility of evidence are to be determined by the trial court); Tenn. R. Crim. P. 12(b), (e) (questions of suppression of evidence to be determined by trial court pursuant to pretrial motion).

Accordingly, we conclude that the jury charge, as given, "correctly, fully, and fairly set forth the applicable law."

**9.       Sentencing**

The defendant claims that his period of confinement was improperly enhanced from 45 days to six months. He very cryptically alleges that he did not receive ten days' notice, that his previous DUI was an element of the offense and cannot be used as an enhancement factor, and that the trial court did not articulate criteria in determining the enhancement of confinement. The state responds by asserting that the trial court is not required to make findings or specific notation of enhancement and mitigating factors for DUI cases. The state argues that the defendant has waived this issue because his brief does not cite any authority and does not even provide any reasoning supporting his conclusory statements.

When a defendant fails to make appropriate references to the record and fails to cite authority to support his argument, he waives the issue. Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. Rule 10(b). Although the defendant made only conclusory statements in his brief without reference to the record or authority, we will address the merits of the defendant's issue.

In misdemeanor sentencing, a separate sentencing hearing is not mandatory, but the court is required to provide the defendant with a reasonable opportunity to be heard as to the length and manner of the sentence. Tenn. Code Ann. § 40-35-302(a) (1997). Misdemeanor sentences must be specific and in accordance with the principles, purpose, and goals of the Criminal Sentencing Reform Act of 1989. Tenn. Code Ann. §§ 40-35-104, 117, 302 (1997); <u>State v.</u>

26

Palmer, 902 S.W.2d 391, 393 (Tenn. 1995). The misdemeanor offender must be sentenced to an authorized determinant sentence with a percentage of that sentence designated for eligibility for rehabilitative programs. Generally, a percentage of not greater than 75 percent of the sentence should be fixed for a misdemeanor offender; however, a DUI offender may be required to serve 100 percent of his sentence. Palmer, 902 S.W.2d at 393-94. In determining the percentage of the sentence, the court must consider enhancement and mitigating factors as well as the legislative purposes and principles related to the sentencing. Id.

The trial court retains the authority to place the defendant on probation either immediately or after a period of periodic or continuous confinement. Tenn. Code Ann. § 40-35-302(e) (1997). The trial court has a wide latitude of flexibility. The legislature has encouraged courts to consider public or private agencies for probation supervision prior to directing supervision by the Department of Correction. Tenn. Code Ann. § 40-35-302(f) (1997). The misdemeanant, unlike the felon, is not entitled to the presumption or a minimum sentence. State v. Creasy, 885 S.W.2d 829 (Tenn. Crim. App. 1994).

The trial court imposed split confinement and incarcerated the defendant for six months. Although the six months exceeds the minimum confinement of forty-five days for second-offense DUI, it is nevertheless within a range of reasonableness that must be entrusted to the trial court. Unlike felony sentencing, the trial court does not have an affirmative duty to state in the record, either orally or in writing, which enhancement and mitigating factors it found and its findings of fact. Tenn. Code Ann. § 40-35-209(c) (1997); § 40-35-210(f) (Supp. 1998); § 40-35-302(d)(1997); State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998). We find no fault with the sentence in this case.

Furthermore, the trial court committed no prejudicial error in the manner in which it determined the sentence. After the jury returned its verdict and was dismissed, the trial court indicated it was ready "to proceed with sentencing in

this matter." The trial court asked the assistant district attorney general if the state had any proof to offer, and the state declined. The trial court then asked the defendant if he wished to offer any proof, and the defendant declined.

The court proceeded to impose sentence in the case, without objection by the defendant. We find the defendant was given a reasonable opportunity to be heard. Moreover, had there been no reasonable opportunity, the defendant has waived the issue by failing to object, see Tenn. R. App. P. 36(a), and furthermore he has failed to demonstrate any prejudice from the asserted lack of opportunity to be heard. Tenn. R. App. P. 36(b).

Finding no error, we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE

CONCUR:

_____
DAVID H. WELLES, JUDGE

_____
JERRY L. SMITH, JUDGE